[Cite as *Albrecht v. Albrecht*, 2015-Ohio-4916.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


|  |  |  |
|---|---|---|
| MICHAEL D. ALBRECHT, | : | |
| | | CASE NOS. CA2014-12-240 |
| Plaintiff-Appellee/ | : | CA2014-12-245 |
| Cross-Appellant, | | |
| | : | O P I N I O N |
| | | 11/30/2015 |
| - vs - | : | |
| | : | |
| WENDY J. ALBRECHT, | | |
| | : | |
| Defendant-Appellant/ | | |
| Cross-Appellee. | : | |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR2013-06-0602


Fred S. Miller, Baden & Jones Building, 246 High Street, Hamilton, Ohio 45011, for plaintiff-appellee/cross-appellant

Laurie K. Ahlers, 2345 Ashland Avenue, Cincinnati, Ohio 45206, for defendant-appellant/cross-appellee


**M. POWELL, J.**

{¶ 1} Defendant-appellant/cross-appellee, Wendy Albrecht (Mother), appeals from a judgment of the Butler County Court of Common Pleas, Domestic Relations Division, designating plaintiff-appellee/cross-appellant, Michael Albrecht (Father) residential parent and custodian of the parties' children. Father cross-appeals from the same judgment.

**{¶ 2}** Mother and Father were married on November 20, 1999 and have three children, M.A., 13 years old, D.A., 11 years old, and J.A., 9 years old.[1] On June 7, 2014 Father filed a complaint for divorce from Mother. On July 2, 2014 Mother filed an answer to the complaint for divorce and a counterclaim for divorce from Father. Father duly answered Mother's counterclaim. The matter was scheduled for an evidentiary hearing on May 19 and 20, 2014. Following those two days of testimony, the trial court scheduled a third day for June 17, 2014. The primary concern at the hearing was the allocation of parental rights and responsibilities for the minor children.

**{¶ 3}** The evidence discloses that the parties initially separated in October 2012, but attempted to reconcile their marriage between December 2012 and April 2013. Thereafter, on April 14, 2013, Mother allegedly attempted suicide by means of a prescription drug overdose. Although Mother denies that she attempted to commit suicide, she claims that she does not recall the surrounding circumstances of this event and has undergone hypnosis to attempt to remember the events leading to her overdose. Nevertheless, Mother's prescription drug overdose resulted in hospitalization and a discharge summary indicating that she was at high-risk for suicide.

**{¶ 4}** The parties permanently separated in May 2013 when Mother moved from the marital home and began renting an apartment. During the separation, the parties agreed to divide parenting time, with the children residing with Father in the marital home for the majority of the week. While the children have shown great resiliency throughout this ordeal, excelling both socially and academically, the parents have experienced an antagonistic relationship with each other. Father complains of Mother's habitual drinking and infidelity, while Mother alleges that Father has anger management and control issues. Details of

---

1. The children's ages as of the date of the magistrate's decision.

certain recorded phone conversations and arguments were entered into the record. Those conversations generally highlight the parties' poor relationship with one another and their propensity to engage in shouting matches and name calling.

{¶ 5} According to former and current school teachers of the children, the children are exceptional and very bright. The teachers testified that the children displayed appropriate behavior in school and the teachers found the parents to be cooperative and appropriate when addressing the children's needs at school.

{¶ 6} Although the children were diagnosed by a licensed professional counselor as having an adjustment disorder, which is common in children of divorce, the children had exhibited little change in eating or sleeping habits and there were no reported issues with their school work or behavior.

{¶ 7} Father provided some background about his marriage with Mother and highlighted specific concerns that he had with Mother's behavior. Specifically, Father referenced several photographs that Mother posted to Facebook, which he believed were inappropriate and sexually suggestive, especially considering that Mother was Facebook "friends" with the children who could also view those photographs. Father also expressed concerns with Mother's heavy drinking and infidelity. In fact, Mother had engaged in an affair with Father's best friend. Although Father denied that he has anger management problems, he did not deny that at times he acted inappropriately towards Mother and explained that some of his anger was a result of "the heat of the moment."

{¶ 8} Dr. Barbara Brewer, a psychologist hired by Mother to perform a psychological evaluation of both parties and the three children, believed both parties were loving parents, but that Father had "no clue" about appropriate conversation with the children. Specifically, Brewer noted that Father had made inappropriate comments to the children related to

Mother's infidelities and had engaged in inappropriate name-calling. Brewer also expressed concerns with Father's repeated "rants" about Mother, which she believed were "clearly excessive" and "almost compulsive." Brewer was particularly concerned after being contacted by the guardian ad litem (GAL) about a recorded telephone conversation between Mother and Father. In the recording, Mother and Father are heard arguing and screaming. Mother is yelling at Father about the inability to talk with her children one evening, while Father responds with insults and foul language. Overall, Brewer testified that she has no concerns with either parent when alone with the children, but she was concerned about the children's exposure to the loud and aggressive language that Father directs toward Mother when they interact. While Brewer expressed concerns that Mother's sexualized text messaging, sexual affairs, and drinking may have an "indirect" effect on her parenting, she believed Mother would be more likely to help nourish the children's relationship with both parties. Placing great emphasis upon the recording of the telephone conversation between Father and Mother shared with her by the GAL, Brewer changed her initial custody recommendation from shared parenting to one with Mother serving as sole residential parent for the children.

{¶ 9} Mother admitted to engaging in multiple extramarital affairs and acknowledged that she drank alcohol towards the end of the relationship as a means of escape. However, Mother did not believe any of her sexual experiences affected her parenting skills. With respect to the custodial arrangements, Mother wanted full custody of the children because she had been the children's primary caregiver for the majority of their lives. While she acknowledged that Father had done an adequate job of caring for the children, insofar as he kept "the ship steering," Mother believed that she could better care for the children's emotional needs and also expressed her concern regarding Father's anger management

- 4 -

issues.

{¶ 10} The children's GAL expressed concern about Father's name-calling and yelling at Mother. The GAL believed this to be completely inappropriate. In recommending that Mother be named the residential parent and custodian of the children, the GAL was of the opinion that Mother will provide more stability for the children. The GAL emphasized that she found Father's anger toward Mother to be unacceptable and not in the best interests of the children.

{¶ 11} As indicated above, a third day of testimony was added to the two originally scheduled. The record reflects prolonged examination and cross-examination to solicit evidence that tended to be cumulative and repetitious, with primary emphasis upon Father's anger management issues and Father's testimony about Mother's drinking. Prior to scheduling the third day of hearing, the trial court admonished the parties to tailor their presentations to be completed within the third, and final, day of hearing. The trial court denied Mother's request to permit additional time to present evidence beyond the third day of hearing.

{¶ 12} Following the conclusion of the evidence, the trial court designated Father as the residential parent and legal custodian of the children, but ordered parenting time with Mother both during the week and on alternating weekends. Furthermore, the trial court ordered that the parties share "50/50" weekly parenting time during the summer months and entered an order for child support. Mother now appeals the decision of the trial court, raising two assignments of error for review, and Father cross-appeals, raising one assignment of error for review.

{¶ 13} Mother's Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED IN GRANTING CUSTODY TO FATHER.

{¶ 15} In her first assignment of error, Mother argues the trial court erred by designating Father as the children's residential parent and legal custodian. In support of her claim, Mother raises several issues for review. However, after having reviewed Mother's argument and the transcript of the proceedings, we find her assignment of error to be without merit.

**Additional Time To Present Testimony**

{¶ 16} As an initial matter, we will separately address Mother's argument that the trial court abused its discretion by not allowing her additional time to present further testimony on the disputed matters in this case.

{¶ 17} It is axiomatic that a trial court judge "possesses inherent power to regulate court proceedings." *Dollries v. Dollries*, 12th Dist. Butler Nos. CA2012-08-167 and CA2012-11-234, 2014-Ohio-1883, ¶ 15. "A ruling or order by the court affecting the conduct of trial will not be reversed unless the complaining party demonstrates a prejudicial abuse of discretion." *Brown v. Martin*, 5th Dist. Fairfield No. 14-CA-31, 2015-Ohio-503, ¶ 37. An abuse of discretion is more than an error in judgment or law and connotes that the trial court's decision is arbitrary, unreasonable, or unconscionable. *Valentine v. Valentine*, 12th Dist. Butler No. CA2010-12-320, 2012-Ohio-426, ¶ 10.

{¶ 18} After review, we find the trial court did not err in its denial of Mother's request for additional time to present evidence. Mother has failed to demonstrate the trial court's decision was an abuse of discretion. While Mother complains she was not afforded sufficient time to present all of the necessary evidence and cross-examine the witnesses, she fails to proffer or set forth any specific facts that would have been introduced had the trial court agreed to extend the hearing on this matter. By failing to do so, Mother has failed to show how she was prejudiced by the trial court's ruling. *See, e.g., Dollries* at ¶ 16 (declining to find

an abuse of discretion where the complaining party did not proffer any potential testimony or articulate what information was absent, yet necessary).

{¶ 19} Moreover, the record demonstrates that both parties were similarly constrained during the final day of the hearing. The parties were initially provided two full days to present testimony and the trial court later extended the hearing to include a third full day of testimony. Prior to the final hearing date, the parties were made well-aware of the trial schedule and each had the ability to tailor their respective cases accordingly. During Mother's cross-examination of Father, the trial court reminded the parties of the time constraints and the need to ensure adequate time to examine all of the witnesses. The trial court interjected at multiple times during the lengthy cross-examination of Father to remind Mother's counsel of the time, even expressly stating:

> [THE COURT]: It's almost 3:00 o'clock. You were gonna take an hour, you've taken two. I understand, but I'm anxious that you may not get your client on the stand.
>
> [COUNSEL]: Well, let me just have him identify these for right now.

{¶ 20} Despite repeated warnings, Mother continued to cross-examine Father in a contentious back-and-forth manner regarding Father's alleged anger management problems and the allegations he made involving Mother's infidelity. Simply, Mother and her trial counsel chose to pursue a strategy more centered on the cross-examination of Father, rather than a strategy more focused on other, unspecified, additional evidence. Despite repeated warnings and admonitions from the trial court regarding the timing and sequence of questioning, it was ultimately the trial court that dismissed Father from the stand and stated on the record that "we are going over and over and over the same grounds." Considering such facts, we decline to find an abuse of discretion where the trial court was simply exercising its power to regulate these proceedings. Accordingly, we find that the trial court

did not abuse its discretion by adhering to a strict trial schedule and limiting the hearing to three full days.

### Best Interests

{¶ 21} We now address Mother's argument that the trial court erred in naming Father as the residential parent and custodian of the children. A trial court's decision regarding custody will not be disturbed on appeal absent an abuse of discretion. *Rarden v. Rarden*, 12th Dist. Warren No. CA2013-06-054, 2013-Ohio-4985, ¶ 9. "This highly deferential standard of review rests on the premise that the trial judge is in the best position to determine the credibility of witnesses because he or she is able to observe their demeanor, gestures, and attitude." *Id.* at ¶ 10. This is especially true in cases involving child custody, "since there may be much that is evident in the parties' demeanor and attitude that does not translate well to the record." *Id.*

{¶ 22} R.C. 3109.04 governs the award of parental rights and responsibilities. In making this determination, the primary concern is the best interest of the child. *Ruble v. Ruble*, 12th Dist. Madison No. CA2010-09-019, 2011-Ohio-3350, ¶ 11. In determining the best interests of the child, the trial court must consider all relevant factors including, but not limited to, the enumerated factors in R.C. 3109.04(F)(1):

> (a) The wishes of the child's parents regarding the child's care;
>
> (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;

(e)   The mental and physical health of all persons involved in the situation;

(f)   The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

* * *

(i)   Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

* * *

{¶ 23} In the present case, the trial court found it was in the children's best interest to designate Father as the residential parent. In so doing, the court noted that it had considered the relevant factors contained in R.C. 3109.04 and detailed its findings. Specifically, the court expressed concern with Mother's emotional and mental stability and her overall ability to parent. The court further noted that, while "Mother's sexual escapades and depression are not alone disqualifying factors * * * this court finds Mother has not achieved a level of stability that is necessary for her to provide a stable home for the children."

{¶ 24} After a thorough review of the record, we find the trial court did not err in designating Father as the residential parent and custodian of the children. As previously noted, it was the role of the trial court to determine the relative weight to assign each factor, in relation to the others, when determining the children's best interest. *See Ruble*, 2011-Ohio-3350 at ¶ 18; *Sheppeard v. Brown*, 2d Dist. Clark No. 2007 CA 43, 2008-Ohio-203, ¶ 47. Here, the record reflects that the trial court considered all relevant factors in R.C. 3109.04(F)(1) and properly applied those factors in making its decision designating Father residential parent and legal custodian. As the evidence indicates, the children are well-adjusted to their home, school, neighborhood, and community. Since Mother moved out of the house in May of 2013, Father has ensured the appropriate care of the children and has

been able to provide them with a healthy and safe environment.  Although the trial court did note Father's vitriolic outbursts and anger issues directed at Mother, the trial court found that Father was more likely to provide the necessary level of stability to support the children's best interests.  For example, the record reflects that Father accepted the trial court's suggestion that he seek counselling for his anger issues, while Mother did not accept the trial court's suggestion that she seek help with her problematic use of alcohol.

{¶ 25} Furthermore, we reject Mother's argument that the trial court "ignored" the custody recommendations of the GAL and the psychologist by awarding custody to Father.  As noted above, such recommendations are only one consideration that the trial court may take into account when making its best interest determination.  Here, the trial court considered the recommendations issued by the GAL and the psychologist, but ultimately found it was in the best interest of the children for Father to be named residential parent and custodian based on additional evidence that was presented during the hearing.  Specifically, the trial court indicated that it discounted the psychologist's opinion based on her failure to acknowledge the serious dysfunctional and destructive behavior of Mother.  In addition, the trial court also expressed concern regarding the impartiality of the psychologist by noting instances where she had failed to offer Father an opportunity to discuss certain events with her, as well as her sudden change in custody recommendations "based upon very limited events."  Accordingly, while the trial court discounted the opinions of the GAL and the psychologist, Mother's argument that the trial court "ignored" those opinions is not supported by the record.

{¶ 26} As the trial court's decision was supported by competent, credible evidence, we find that the trial court did not abuse its discretion by designating Father as residential parent for the children.  Mother's first assignment of error is without merit and is overruled.

{¶ 27} Mother's Assignment of Error No. 2:

{¶ 28} THE JUDGE ERRED WHEN SHE DID NOT INCLUDE A DOWNWARD DEVIATION IN MOTHER'S CHILD SUPPORT OBLIGATION TO ACCOUNT FOR THE INCREASED TIME SHE WILL HAVE THE CHILDREN IN THE SUMMER.

{¶ 29} In her second assignment of error, Mother argues the trial court erred by not deviating from the standard child support order because she has extended visitation with the children.

{¶ 30} Pursuant to R.C. 3119.22, a trial court may deviate from the standard child support order if, after considering the factors and criteria set forth in R.C. 3119.23, such an order would be unjust or inappropriate and would not be in the best interest of the children. *Brown v. Brown*, 12th Dist. Butler No. CA2014-09-184, 2015-Ohio-1930, ¶ 7. In determining if a deviation is in the best interest of the children, R.C. 3119.23 sets forth a number of factors that the court may consider. *Id.* One such factor is "extended parenting time or extraordinary costs associated with parenting time." *Vreeland v. Vreeland*, 12th Dist. Butler No. CA2011-12-238, 2012-Ohio-4222, ¶ 9, citing R.C. 3119.23(D).

{¶ 31} It is well-established that the purpose of the child support system is to protect the children and their best interests. *Mannerino v. Mannerino*, 12th Dist. Butler No. CA2010-08-210, 2012-Ohio-1592, ¶ 9. To that end, the trial court possesses considerable discretion in child support matters. *Brown* at ¶ 10. Therefore, matters involving child support are reviewed under an abuse of discretion standard. *Van Osdell v. Van Osdell*, 12th Dist. Warren No. CA2007-10-123, 2008-Ohio-5843, ¶ 20.

{¶ 32} Despite Mother's argument, the trial court was not required to deviate from the standard order simply because she has more than the standard visitation order. As this court has previously stated, "although the trial court is permitted to deviate from the standard child

- 11 -

support worksheet upon finding one or more of the factors listed in R.C. 3119.23 are present, 'one is not automatically entitled to a downward deviation merely because a factor is present.'" *Keith v. Keith*, 12th Dist. Butler No. CA2010-12-335, 2011-Ohio-6532, ¶ 18, quoting *Mitchell v. Mitchell*, 11th Dist. Lake No.2009-L-124, 2010-Ohio-2680, ¶ 28. While Mother does receive additional parenting time during the summer, these additional days do not comprise significantly more parenting time than that provided by the standard visitation order and Mother did not present any evidence demonstrating that such a deviation would be in the children's best interests. *Theurer v. Foster-Theurer*, 12th Dist. Warren Nos. CA2008-06-074 and CA2008-06-083, 2009-Ohio-1457, ¶ 69 ("[t]he party that attempts to rebut the basic child support guideline amount has the burden of presenting evidence which proves that the calculated award is unjust, inappropriate or not in the best interest of the child"). Accordingly, Mother's second assignment of error is overruled.

{¶ 33} Father's Cross-Assignment of Error No. 1:

{¶ 34} THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT ORDERED HIM TO EVENLY DIVIDE THE GUARDIAN AD LITEM FEES.

{¶ 35} In his sole cross-assignment of error, Father argues the trial court abused its discretion by ordering each of the parties to pay 50 percent of the GAL fee because he claims the GAL was biased and provided a report containing significant flaws and errors.

{¶ 36} Civ.R. 75 grants to the court broad authority to tax the GAL's free as costs. *Gabriel v. Gabriel*, 6th Dist. Lucas No. L-08-1303, 2009-Ohio-1814, ¶ 15. As such, the trial court's decision to allocate the payment of fees is subject to an abuse of discretion review. *Id.*

{¶ 37} We have reviewed the record and find the trial court did not abuse its discretion

- 12 -

in ordering the parties to evenly split the GAL's fees. Although Father complains the GAL was biased and issued an erroneous report, his argument in support is merely a recitation of his argument at trial and on appeal. The record reflects that the GAL engaged in an independent evaluation of the parties, their children, school officials, and counselors and then issued a recommendation based on those findings. Although Father took exception to the GAL's recommendation of awarding custody to Mother, we find no evidence to suggest that the report was inherently flawed or biased. Accordingly, the trial court did not abuse its discretion in ordering the parties to equally divide the GAL fees. Father's cross-assignment of error is overruled.

{¶ 38} Judgment affirmed.

PIPER, P.J., and S. POWELL, J., concur.