[Cite as *Suwareh v. Nwankwo*, 2018-Ohio-3737.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| LAMIN SUWAREH, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2017-12-174 |
| | : | O P I N I O N |
| - vs - | | 9/17/2018 |
| | : | |
| CHINELO NWANKWO, | : | |
| Defendant-Appellee. | : | |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR14080831


Thomas G. Eagle, 3400 N. State Route 741, Lebanon, Ohio 45036, for plaintiff-appellant

Patricia A. Baas, 1831 West Galbraith Road, Cincinnati, Ohio 45239, for defendant-appellee


**HENDRICKSON, J.**

{¶ 1} Plaintiff-appellant, Lamin Suwareh ("Father"), appeals from a decision of the Butler County Court of Common Pleas, Domestic Relations Division, that modified the terms of the shared parenting plan he and defendant-appellee, Chinelo Nwankwo ("Mother"), entered into at the time of their April 2015 divorce. For the reasons set forth below, we affirm in part, reverse in part, and remand the matter for further proceedings.

{¶ 2} At the time of their divorce, Mother and Father had two minor sons, A.A.S, born

July 5, 2013, and K.O.S., born July 28, 2014. The final decree of divorce incorporated and adopted an agreed upon shared parenting plan, which provided that while both parties were the residential parent and legal custodian of the children, Mother's residence was the children's primary residence. Father lived within 15 minutes of Mother's residence and was given substantial parenting time with the children, with his parenting time varying weekly.[1] Under the terms of the shared parenting plan, Father was responsible for almost all transportation for his parenting time until K.O.S. turned four years old.

{¶ 3} The shared parenting plan further provided that the parties would alternate holidays, with Mother being given preference on all Christian holidays and Father being given preference on all Muslim holidays. If a parent intended to relocate outside of Butler County, the shared parenting plan required the parent to provide at least 60-days advance notice to the other parent and to the court, and further provided that "[i]f either parent believes the relocation requires a change in the allocation of parenting time, it is the responsibility of that parent to file a motion to review the allocation of parenting time."

{¶ 4} The shared parenting plan also provided that "[b]oth parents recognize that the children legally may attend school in either parent's school system." The parties agreed to consult with one another as to the appropriate school placement for the children, and if unable to agree by March 30th of the year preceding the academic year in question, agreed to seek mediation to resolve the issue before any motions were filed with the domestic relations court.

{¶ 5} Father was ordered to pay child support to Mother in an amount exceeding $800 per child per month and to provide health insurance for the children. Uncovered health

---

1. The parties agreed to a "four-week schedule" that rotated Father's parenting time with the children each week, with Father being given weekend parenting time on one week and weekday parenting time during the other three weeks. Additionally, Father had a different parenting schedule for his youngest son, K.O.S., until K.O.S. turned one. At that time, Father's parenting time with K.O.S. became the same as his parenting time with A.A.S.

care expenses were to be split between the parties, with Father paying 60 percent of the costs and Mother paying 40 percent. Finally, the shared parenting plan provided that "Mother shall be responsible for personal grooming decisions for the children and shall be responsible for the children's hair care (e.g., haircuts, styling, etc.)."

{¶ 6} Following the parties' divorce, multiple motions were filed. As pertinent to the present appeal, in July 2016 the trial court adopted a magistrate's June 29, 2016 Decision and Judgment which modified Father's monthly child support obligation to $586.65 per child and clarified the parties' parenting time during the holidays. The parties were ordered to follow the court's standard parenting schedule with respect to holidays, "with modifications for religious holidays." Mother was given parenting time with the children on Christmas Eve, Christmas Day, Good Friday, and Easter Sunday. Father was given "parenting time with the children on major Muslim holidays and feasts he celebrates." Father was instructed to "notify Mother as far in advance as he is able the dates upon which the holidays are to be celebrated each year." The June 29, 2016 decision further ordered Mother to reimburse Father $580.32 for medical expenses associated with the birth of their youngest son.

{¶ 7} On November 18, 2016, Father filed a number of motions, including a (1) Motion to Show Cause-Decree, (2) Motion for Contempt of Decree/Order, (3) Motion to Reallocate Parental Rights and Responsibilities, (4) Motion to Modify Parenting Provision – Communication, (5) Motion to Modify Parenting Provision – Transportation, (6) Motion to Modify Parenting Time, (7) Motion to Establish Spousal Support Overpayment, and a (8) Motion to Modify Child Support.[2] Within these motions, Father sought to have Mother held in contempt for failing to pay her share of an outstanding IRS debt ordered by the decree of

2. Father's Motion to Modify Child Support was mistakenly labeled "Motion to Modify Spousal Support Increase/Reduction/Termination." Given the arguments raised in Father's memorandum in support of the motion, the court construed the motion as a request to modify child support.

divorce and for failing to pay her share of medical expenses related to the birth of K.O.S. Father also sought to have child support recalculated as Mother had recently completed her master's degree and "is able or is actually earning considerably more than when the original order issued, creating more than a 10% difference as compared to the current support order."

{¶ 8} With respect to his motion to reallocate parental rights and responsibilities, Father sought "an order allocating the responsibility for the children's haircuts to Father." Rather than seeking to terminate shared parenting, Father sought to modify certain terms of the shared parenting plan so that he would have additional parenting time with the children, would not be responsible for transportation at the commencement of Mother's parenting time, and would have the ability to communicate with his sons via telephone or through other media sources while they were in Mother's physical custody.

{¶ 9} On February 6, 2017, while Father's motions were pending, Mother filed a Notice of Intent to Relocate Outside of Butler County, indicating her intent to move with the children to Columbus, Ohio for a new job opportunity. Father opposed Mother's move.

{¶ 10} A hearing on Mother's anticipated move to Columbus and the November 18, 2016 motions filed by Father was held before a magistrate on April 7, 2017. At this time, Mother and Father were the only individuals to testify. The parties introduced, and the magistrate accepted into evidence, exhibits pertaining to the parties' communications with one another, their respective tax documents and bank statements, Father's paystubs, a letter of employment for Mother, and receipts of daycare expenses.

{¶ 11} On June 15, 2017, the magistrate issued a Decision and Judgment in which it denied Father's motion to hold Mother in contempt with respect to the IRS debt, but granted the motion and found Mother in contempt for failing to reimburse Father for medical expenses related to the birth of K.O.S. The magistrate granted Father's request to modify

child support, reducing Father's monthly support obligation to $443.52 per child, but denied Father's request to establish overpayment of spousal support, given that "spousal support * * * terminated effective September 13, 2015 * * * [and] [t]here was not evidence or testimony presented regarding any overpayment of spousal support."

{¶ 12} The magistrate granted Father's request that he be allocated the responsibility of the children's haircare and granted Father's request to modify the parenting plan to establish a set time for the parent without physical custody to telephone and have media contact with the children during the other parent's parenting time. The magistrate also granted Father's request to modify the shared parenting plan with respect to transportation of the children. The magistrate ordered that the parties "meet at a mid-way point to exchange the children for parenting time. If the parties cannot agree upon a half-way location, then each party shall provide the entire transportation at the beginning of their parenting time period so that Father would drive to Westerville to pick up [A.A.S.] and [K.O.S.] at the beginning of his parenting time/conclusion of Mother's parenting time and Mother would drive to Fairfield to pick up the children at the conclusion of Father's parenting time/beginning of Mother's parenting time." Finally, the magistrate granted a modification of the parties' parenting-time schedule, stating:

> The court has considered the change in the distance involved and Father's work schedule and finds the following parenting schedule is in the best interest for [A.A.S.] and [K.O.S.] and recommends this schedule until [A.A.S.] starts Kindergarten:
>
> Father shall have parenting time with the children on alternating weeks from 5:00 PM if he is picking them up from Mother in Westerville/Columbus (or at 6:30 PM if meeting at an agreed upon halfway location) on Wednesday and have them until Sunday at 5:00 PM if Mother is picking up the children from Father in Fairfield/Butler County area (or at 6:30 PM if meeting at an agreed upon halfway location).

{¶ 13} Father filed a number of objections to the magistrate's decision, including an

objection to the magistrate's refusal to prevent Mother from relocating to the Columbus area and an objection to the parenting schedule ordered by the magistrate. On November 16, 2017, following a hearing on the objections, the trial court issued a decision in which it adopted the magistrate's decision, with certain modifications relating to the parenting schedule. The court first noted that it could not "prohibit a parent from relocating" but rather had to "allocate parental rights and responsibilities in a manner that is in the best interest of the child based upon the relocation of either parent." After considering the best interest factors set forth in R.C. 3109.04(F), the court found that "[t]he schedule recommended by the Magistrate * * * remains in the children's best interest." However, in examining the parenting schedule, the court noted that the magistrate's order failed to address parenting time for when A.A.S., the oldest child, began kindergarten. The court therefore ordered that once A.A.S. started kindergarten,

> [Father] shall have parenting time with the oldest child from Friday after school until Sunday at 8 pm one weekend per month. [Father] shall exercise his weekend when there is a three-day weekend in any month which includes a Monday, and shall have until Monday at 8 pm.
>
> If either parent cannot take off of work for the full parenting time, they may exercise part of their parenting time and does not forfeit their time.
>
> Additionally, [Father] may have parenting time in Columbus with both children at any time with 24 hours' notice to [Mother]. [Mother] shall sign any releases necessary for [Father] to pick up the children from daycare. [Father] shall be responsible for transporting the children for any prescheduled activities.
>
> [Father] shall have every spring break with both children, with the hours consistent with DR610.1, absent agreement of the parties.
>
> Under no circumstances shall the children miss school (kindergarten and beyond through high school) for parenting time.
>
> During the summer, beginning the first weekend after the end of school until 8 pm on the Friday prior to the first day of school, [Father] shall have parenting time with the children from Monday

at 8 pm through the week until Friday at 5 pm. As an exception, the parties shall each have one full 10 day period with both children for summer vacation with 60 days' notice to the other parent.

[Father's] regular weekday schedule shall resume at 8 pm the Friday prior to the first day of school.

Parenting time shall be pursuant to prior orders as it regards religious holidays. Other than ordered above, holidays and days of special importance shall be pursuant to DR610.1.

{¶ 14} Father timely appealed the trial court's decision, raising the following as his sole assignment of error.

{¶ 15} THE TRIAL COURT ERRED IN ALLOCATING PARENTING RIGHTS.

{¶ 16} In his sole assignment of error, Father sets forth two challenges to the parenting schedule ordered by the trial court. He first argues that the trial court erred in fashioning a parenting-time schedule for when A.A.S. begins school, as neither party requested a change in the schedule concerning the "future event of kindergarten attendance." He also argues that the trial court erred in "sua sponte declaring that a child cannot miss school for parenting time, * * * [without making a] provision for Father's religious (Muslim) holidays, which are not provided in the conventional public school schedule."

{¶ 17} We note that "in reviewing a domestic relations issue, an appellate court employs an abuse of discretion standard of review." *McNeal v. Mahon*, 12th Dist. Clermont No. CA2015-11-094, 2016-Ohio-5373, ¶ 20. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "When applying the abuse-of-discretion standard, a reviewing court must not substitute its judgment for that of the trial court." *In re E.L.C.*, 12th Dist. Butler No. CA2014-09-177, 2015-Ohio-2220, ¶ 16.

**Parenting Time After Schooling Begins**

{¶ 18} Father's motion to modify parenting time was considered simultaneously with

- 7 -

issues relating to Mother's anticipated move to the Columbus area. In granting Father's motion, the trial court fashioned a parenting-time schedule in a manner that displeased Father. Father now challenges the trial court's modification of his parenting time, arguing his motion and his objections to the magistrate's decision granting a modification of the parenting-time schedule "had nothing to do with school or kindergarten attendance." He asserts that by fashioning an order that controls the parenting-time schedule after A.A.S. starts kindergarten, the court "depriv[ed] the parties of their opportunity to advocate their children's interests before that happens" and denied him of his due process right to be heard on the issue. We disagree.

{¶ 19} When a parent seeks to modify the terms of the shared parenting plan to change the amount or schedule of parenting time, as opposed to seeking to modify the designation of residential parent and legal custodian of the children, the best-interest standard in R.C. 3109.04(E)(2)(b) controls the analysis. *Fisher v. Hasenjager*, 116 Ohio St.3d 53, 2007-Ohio-5589; *Senesac v. Gray*, 12th Dist. Preble No. CA2009-03-010, 2009-Ohio-6237, ¶ 10; *Castanias v. Castanias*, 12th Dist. Warren No. CA2007-01-015, 2008-Ohio-2909, ¶ 18. R.C. 3109.04(E)(2)(b) provides that

> [t]he court *may modify the terms of the plan for shared parenting* approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or *upon the request of one or both of the parents under the decree.* Modifications under this division may be made at any time. *The court shall not make modification to the plan under this division, unless the modification is in the best interest of the children.*

(Emphasis added.)

{¶ 20} In determining the best interest of the children, R.C. 3109.04(F)(1) requires the court to consider all relevant factors. *Car v. Car*, 12th Dist. Warren Nos. CA2015-02-015 and CA2015-03-020, 2016-Ohio-6986, ¶ 22. These factors include, but are not limited to: (1) the

wishes of the parents; (2) the child's wishes, as expressed to the court in chambers; (3) the child's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the child's best interests; (4) the child's adjustment to home, school, and community; (5) the mental and physical health of all persons involved in the situation; (6) the parent more likely to honor and facilitate visitation; (7) whether one parent has denied the other of parenting time; (8) whether child support orders have been followed; and (9) whether either parent has established or is planning to establish a residence outside of Ohio. R.C. 3109.04(F)(1)(a)-(j).

{¶ 21} In the present case, we find that the trial court did not abuse its discretion in modifying Father's parenting-time schedule. Contrary to Father's arguments, the parties had notice and were provided with an opportunity to be heard with respect to the parenting schedule and the best interests of the children. The record reflects that the court considered the best interest factors set forth in R.C. 3109.04(F)(1) before fashioning a parenting-time schedule that applied to the time period before A.A.S. started school and to the time period after A.A.S. starts school.

{¶ 22} In modifying the parenting-time schedule, the court considered "all relevant factors," including the parent's wishes, the children's relationships with their parents, and the children's ages and schooling needs. The court had before it Father's testimony that he was opposed to Mother moving to Columbus as it would interfere with his ability see his children, given that he resides in Fairfield, Ohio. Father stated that he and his children are "very close" and that they enjoy playing soccer, going to the park, and visiting Chuck E. Cheese's together. Father testified that he wanted increased parenting time with the children on weekdays, when he was not working. Father explained that he is a nurse and has a full-time job as a weekend manager for Hospice of Southwest Ohio, which requires him to work weekends, from 5:00 p.m. on Fridays until 8:00 a.m. on Mondays. Father also has a part-

time job with Senior Star Management Co., where he works "as needed" throughout the week. In addition to his two jobs, Father is pursuing an advanced degree in nursing at the University of Cincinnati, where he takes "on average" nine credit hours each semester.

{¶ 23} The court also had before it Mother's testimony that Mother wanted the children to move with her to Columbus and she wanted to establish a structured routine for the children. Mother stated she desired to have the children attend a daycare consistently, Monday through Friday. She also wanted to send the children to preschool – an activity that Father indicated he was not opposed to.[3] Mother explained that her desire to move to Columbus was for employment. She testified that she had recently completed her master's degree and was offered a position with Defense Finance Accounting Service as an IT specialist in Columbus, Ohio. Mother testified her new job was "not something that's too far. There was some stuff like in Atlanta, other places, that I really had to consider and think twice about and I don't want the kids to be that far away from their dad. * * * [I]t's only two hours away. I'll try to, uh, figure out a way that we can make it work."

{¶ 24} Given the evidence presented, we find no error in the trial court's decision to grant the motion to modify parenting time or in the court's fashioning of a parenting schedule

---

3. **{ a}** At the April 7, 2017 hearing, Father testified as follows regarding preschool:

  **{ b}** [MOTHER]: [A]re you against the kids starting preschool?

  **{ c}** [FATHER]: Absolutely not.

  **{ d}** [MOTHER]: Okay, okay.

  **{ e}** [FATHER]: Absolutely not.

  **{ f}** [MOTHER]: So you don't support the kids starting preschool to make sure they're –

  **{ g}** [FATHER]: The preschool with proper consultation with no ulterior motives, yes.

  **{ h}** [MOTHER]: Okay.

  **{ i}** [FATHER]: If the kids' best interest is put forward, uh, I'm all for that.

that applies to both the time period before A.A.S. starts kindergarten and to the time period after he starts schooling. At the time the court entered its decision, A.A.S. was four years old and K.O.S. was three years old. As A.A.S. was rapidly approaching the age where he would begin schooling, the court appropriately considered this circumstance in fashioning a parenting-time schedule that was in A.A.S.'s best interest.

{¶ 25} Father's argument that the court's decision in some way invalidated the parties' agreement in the shared parenting plan to "consult as to the appropriate school placement for the minor children when that times comes" is without merit. The trial court's order did not address or modify the provisions of the shared parenting plan governing school placement for the children.

{¶ 26} Accordingly, for the reasons expressed above, we find Father's arguments that the trial court erred in fashioning a parenting-time schedule for after A.A.S. begins schooling to be without merit.

**Parenting Time Regarding Religious Holidays After Schooling Begins**

{¶ 27} In his brief, Father also contends that the trial court's holding that "[u]nder no circumstances shall the children miss school (kindergarten and beyond through high school) for parenting time," directly contradicts the court's prior order regarding parenting time during the holidays. Father argues that the trial court's order "sua sponte took * * * away" his ability to exercise parenting time with the children on Muslim holidays and denied him of his due process rights, right to religious freedom, and right to equal protection of the law. Mother, however, interprets the court's parenting schedule differently, and she contends in her brief that the court's judgment had no effect on its prior order that Father was to be given "parenting time with the children on major Muslim holidays and feasts he celebrates." Mother maintains that "either parent's religious holiday practices take precedence over the ordinary

parenting time allocation" and that "[t]he prohibition against missing school does not apply to religious observations."

{¶ 28} At oral argument before this court, Mother's attorney reiterated that the provisions are not in conflict and stated that Mother does not object to the children missing school due to a religious holiday. Mother's attorney indicated her willingness to put on an agreed entry to this effect. However, no agreed entry was ever filed, and the issue raised by Father regarding his ability to exercise parenting time on Muslim holidays while school is in session remains pending before our court.[4]

{¶ 29} "[P]arents have a fundamental right to educate their children, including the right to communicate their moral and religious values * * * [and] 'direct the religious upbringing of their children.'" *Pater v. Pater*, 63 Ohio St.3d 393, 397 (1992), quoting *Emp. Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 881, fn. 1, 110 S.Ct. 1595 (1990). *See also Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526 (1972); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571 (1925). "In a custody dispute, the parents' rights must be balanced against the state's need to determine the best interests of the child." *Pater* at 397. "[A] domestic relations court may consider the religious practices of the parents in order to protect the best interests of a child." *Id.* at 395. However, a court may not restrict a parent's right to expose his or her child to religious beliefs, "unless the conflict between the parents' religious beliefs is affecting the child's general welfare." *Id.* at paragraph two of the syllabus.

{¶ 30} In the present case, the trial court clearly recognized that both parents should

---

4. On August 20, 2018, following oral argument, Mother filed a "Motion," in which she "humbly move[d] th[is] Court to find the religious observation of either parent shall not be an exception to the [t]rial [c]ourt's holding that '[u]nder no circumstances shall the children miss school (kindergarten and beyond through high school) for parenting time.'" Mother recognized this was "a change in the position Mother expressed in [her] brief." Mother's "Motion" and the attachments thereto were stricken by this court and were therefore not considered by this court in ruling on the merits of Father's assigned error. *Suwareh v. Nwankwo*, 12th Dist. Butler No. CA2017-12-174 (Sept. 11, 2018) (Entry Granting Motions to Strike).

have the opportunity to share religious holidays and traditions with their children. However, after reviewing the trial court's November 16, 2017 decision modifying Father's parenting time, as well as the court's June 29, 2016 decision addressing religious holidays, we find that the trial court's order regarding the exercise of parenting time on religious holidays is unclear. The court has ordered the parties to follow DR610.1 with respect to the holiday parenting schedule, "with modifications for religious holidays." Although the court ordered that Father have parenting time with the children "on major Muslim holidays and feasts he celebrates," the court failed to identify those holidays or feasts or the timing or duration of Father's parenting time on said holidays. Moreover, the court's most recent order regarding the exercise of parenting time during the school year provides uncertainty as to whether either parent may remove the children from school to celebrate a religious holiday. Though the court's order indicates a child may not "miss school (kindergarten and beyond though high school)" for the exercise of parenting time, it is unclear whether the court intended its order to extend to religious holidays or only to general parenting time. Therefore, given the ambiguity in the trial court's order, we sustain Father's sole assignment of error in part. We hereby reverse the trial court's November 16, 2017 decision only to the extent it pertains to the parenting-time schedule governing religious holidays, and we remand the matter for the trial court to set forth an order that clearly delineates the religious holidays to which each parent is entitled to exercise his or her parenting time and addresses the parties' ability to remove the children from school to exercise said holiday parenting time. In all other respects, the judgment of the trial court is affirmed.

{¶ 31} Judgment affirmed in part, reversed in part, and the matter remanded for further proceedings.

S. POWELL, P.J., and PIPER, J., concur.

- 13 -