[Cite as *Whitaker v. Whitaker*, 2020-Ohio-2774.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| CARRIE M. WHITAKER, | : | |
| Appellee and Cross-Appellant, | : | CASE NOS. CA2019-05-008<br>CA2019-05-009 |
| | : | |
| - vs - | : | O P I N I O N<br>5/4/2020 |
| | : | |
| CODY B. WHITAKER, | : | |
| Appellant and Cross-Appellee. | : | |

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DRA 20140128

Engel & Martin, LLC, Mary K. Martin, 4660 Duke Drive, Suite 101, Mason, Ohio 45040, for appellee and cross-appellant

Wood & Long, LLC, Chelsea L. Long, Marcie A. Fronefield, 503 South High Street, Suite 205, Columbus, Ohio 43215, for appellant and cross-appellee

**RINGLAND, J.**

{¶1} Appellant/Cross-appellee, Cody Whitaker ("Father"), appeals from a decision of the Fayette County Court of Common Pleas, Domestic Relations Division, following his divorce from appellee/cross-appellant, Carrie Whitaker ("Mother"). Mother also appeals the trial court's decision.

{¶2} Mother and Father were married on August 31, 2002 and had two children: Ca.W born on June 6, 2007, and Co.W born on July 1, 2010. Mother filed a complaint for divorce on April 14, 2014.

{¶3} Mother was awarded temporary custody and the parenting schedule provided for equal parenting time. The parties were able to reach agreement regarding the allocation of marital debts and assets; however, the parties could not agree to the allocation of custody, parenting time, child support, and spousal support.

{¶4} There were 12 evidentiary hearings before the magistrate between June 5, 2014 and November 17, 2015. The record is replete with testimony concerning the parties' devout religious beliefs. Mother and Father met at Jamestown Church of Christ ("JCC") where Father's brother was the Pastor. In 2006, Father's brother resigned as Pastor at the JCC and started a new church called the Transformation Christian Church ("TCC"). The TCC differed in many respects from the JCC, but especially with respect to their beliefs concerning the covenant marriage tenant. The TCC teaches that divorce and remarriage is an unforgivable sin. There is evidence in the record that members of the TCC must "shun" Christian family members and friends that have either divorced and remarried or are married to a person who was previously divorced.[1]

{¶5} This tenant of the TCC caused significant marital strife. Although there is evidence that Mother initially agreed with the teachings of the TCC, the record indicates that her faith in the church soured, especially as the teachings interfered with other relationships that Mother wished to continue. Mother testified that she was expected to not associate with her mother and stepfather because, as professing Christians, they had both

---

1. Father presented testimony from several members of the TCC. Some members denied there was an outright prohibition on associating with divorced Christians, but some alluded to the practice.

divorced their original spouses and remarried each other several decades prior. There was evidence, for example, that Father would fly into a fit of rage if she communicated with her mother, such as one time when he became extremely angry and tossed several birthday gifts outside into the snow after her mother visited her on her birthday. That same day, Father "ransacked" her closet looking for any other gifts or receipts for gifts that could have been given to her in the past. Mother also testified that she was not allowed to attend her younger sister's wedding because she married a man who had previously been divorced.

{¶6} When Mother began to reject the TCC's teachings, she explained that the ensuing years were "tense." Though she denied any physical violence, Mother testified that Father would psychologically torment her for veering from the teachings of the TCC. The record also reveals that Father would engage in certain bullying behaviors, such as throwing water on her and referring to her as a "whore" because of past relationships she had prior to their relationship.[2]

{¶7} The record reveals that the parties had significant marriage difficulties including issues of mistrust and jealousy. Father admits to certain behaviors, including surveilling Mother, demanding passwords for emails and messages, and attaching a GPS device to Mother's vehicle. There was testimony that, on one occasion, Father became so upset that Mother would not give him her passcode to her phone that he held a gun and threatened to kill himself. Father later smashed Mother's phone with a hammer.

{¶8} There was also significant testimony concerning a black dress that Mother wore to a funeral that Father later considered to be immodest. As a result, Father would take photographs of Mother "[t]o show other's how far [Mother] had fallen." Mother explained that this practice has impacted her oldest son, who seems preoccupied with what

---

2. Father described the insult of calling Mother a "whore" his "go to thing."

clothing she wears. Mother believes that Father's conduct has had a negative impact on her relationship with her oldest son. When Mother brought up a concern to Father that their oldest son had said disrespectful things toward her, Father replied "if it was true he could say whatever he wants to me [Mother]."

{¶9} While all this was ongoing, there were developments concerning the investigation of an inappropriate relationship between Mother and a former student where revealing photographs of Mother in lingerie were found on the former student's personal computing device. Mother admits to taking revealing photographs of herself but insists that she took them for Father's viewing. Mother denied sharing the photographs with the student. Mother was never convicted of a crime based on this investigation, but she did voluntarily resign her license to teach. The former student was called to testify but declined to appear and contested the subpoenas.[3]

{¶10} The magistrate issued a judgment entry naming Father residential parent and awarding Mother parenting time. The parties filed objections to the magistrate's decision. Following independent review, the trial court named Mother as the residential parent and awarded equal parenting time. Father now appeals, raising six assignments of error. Mother cross-appeals, raising two cross-assignment of error for review. We will address the assignments of error out of order.

{¶11} Assignment of Error No. 1:

{¶12} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING APPELLEE, MOTHER, CUSTODY OF THE MINOR CHILDREN AS THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} Assignment of Error No. 4:

---

3. The student did appear for a deposition, which was later admitted into the record.

{¶14} THE TRIAL COURT ERRED BY OVERRULING FATHER'S OBJECTIONS TO THE MAGISTRATE'S DECISION.

{¶15} In his first and fourth assignments of error, Father argues the trial court erred by designating Mother as the residential parent and legal custodian of their children and in ordering equal parenting time. Father's arguments are without merit.

{¶16} R.C. 3109.04 governs the award of parental rights and responsibilities. In making this determination, the primary concern is the best interest of the child. *Albrecht v. Albrecht*, 12th Dist. Butler Nos. CA2014-12-240 and CA2014-12-245, 2015-Ohio-4916, ¶ 22. In order to determine the best interest of a child, R.C. 3109.04(F)(1) requires the trial court to consider all relevant factors. *Bristow v. Bristow*, 12th Dist. Butler No. CA2009-05-139, 2010-Ohio-3469, ¶ 8. These factors include, but are not limited to: (1) the wishes of the parents, (2) the child's interaction and interrelationship with his parents, siblings, and other persons who may significantly affect the child's best interest, (3) the child's adjustment to home, school and community, (4) the mental and physical health of all persons involved, and (5) the likelihood that the caregiver would honor and facilitate visitation and parenting time. *Denier v. Carnes-Denier*, 12th Dist. Warren No. CA2015-11-106, 2016-Ohio-4998, ¶ 14.

{¶17} An appellate court will not disturb a trial court's decision with regard to the allocation of parental rights and responsibilities absent an abuse of discretion. *Rainey v. Rainey*, 12th Dist. Clermont No. CA2010-10-083, 2011-Ohio-4343, ¶ 15. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When reviewing a trial court's decision, an appellate court "may not substitute its judgment for that of the trial court because the 'discretion which a trial court enjoys in custody matters should be

accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.'" *Renner v. Renner*, 12th Dist. Clermont No. CA2014-01-004, 2014-Ohio-2237, ¶ 16, quoting *Caldwell v. Caldwell*, 12th Dist. Clermont Nos. CA2008-02-019 and CA2008-03-021, 2009-Ohio-2201, ¶ 15.

{¶18} In ruling on objections to a magistrate's decision, Civ.R. 53(D)(4)(d) requires a trial court to independently review the objected matters to ascertain whether the magistrate properly determined the factual issues and appropriately applied the law. *Koeppen v. Swank*, 12th Dist. Butler No. CA2008-09-234, 2009-Ohio-3675, ¶ 26. When conducting its de novo review, the trial court may not defer to the magistrate because the magistrate is a subordinate officer of the trial court, not an independent officer performing a separate function. *Leach v. Leach*, 12th Dist. Butler No. CA2019-06-092, 2020-Ohio-1181, ¶ 11. Consequently, the trial court has the ultimate authority and responsibility over the magistrate's findings and rulings. *Mandzak v. Graves*, 12th Dist. Butler No. CA2009-06-173, 2010-Ohio-595, ¶ 7.

{¶19} After a thorough review of the record, we find the trial court did not abuse its discretion by designating Mother as the residential parent and legal custodian of the children and allocating equal parenting time. The record reflects that the trial court considered all relevant factors in R.C. 3109.04(F)(1) and applied those factors in making its decision.

{¶20} The record reflects that both Mother and Father wish to be the residential parent and legal custodian of the children and presented evidence and testimony to support their respective positions. The children were not interviewed in camera, but the testimony presented indicates that the children are both bonded to their parents and are well cared for. The children are well-adjusted to their home, school, and community.

{¶21} As it relates to the mental and physical health of the persons involved, the record reflects that Father ordered a psychological report pursuant to R.C. 3109.04(C). The record reflects that both parents may suffer from some mental health distress. Father presented psychological testing and exhibits from a psychologist, Dr. Richard Bromberg. Dr. Bromberg conducted clinical interviews and psychological testing on both Mother and Father and recommended that Father be the primary residential parent for the children. Dr. Bromberg also recommended that Mother only have supervised visitation with the children until she was able to complete a psychological examination and make progress in treatment.

{¶22} The trial court found Dr. Bromberg's testimony and report was relevant and probative, but ultimately outside the scope of the referral. In so doing, the trial court noted that Dr. Bromberg's recommendation was "specious." Though Dr. Bromberg indicated that his recommendation was made to a reasonable degree of psychological certainty, he indicated that many of his conclusions were just "test findings" and equivocated on the value of his findings in terms of a diagnosis. The confusion surrounding Dr. Bromberg's testimony was also shared by the GAL who included as part of her written report:

> My main problem in this case is Dr. Bromberg's testimony. As may have been evident by the direction my cross-examination took, it surprises me that he did not take into consideration the reality that these parties were in. He seemed to want to insist that the test could filter that out, but couldn't say how. He said [Mother] tested very high on the paranoia scale and that the fact that she was in fact being followed and ostracized did not affect the results. I find that hard to believe. In further questioning, he admitted that if a hypothetical spy, who was also being followed and living a deceptive life, took the same test, he did not know how the test would turn out. He called it an interesting question.[4]

---

4. We note that the GAL recommended that Father be the residential parent and recommended a schedule for equal parenting time.

Thus, although the trial court considered Dr. Bromberg's testimony and report, the court declined to adopt his "recommendations" as specious and outside the scope of the referral.

{¶23} As it relates to the likelihood that the caregiver would honor and facilitate visitation and parenting time, the trial court found that Mother would be most likely to cooperate in that regard. In this case, there is evidence that Mother facilitates a relationship between Father and the children, while Father has been less cooperative in this regard. For example, Mother testified that Father would not allow her to visit with the children on Mother's Day because "Mother's Day was for mothers who actually cared about their children." There was also substantial evidence, much of it elicited by Father, regarding the TCC's intolerance regarding divorce. As a result, Mother is concerned that Father's views are impacting her relationship with the children. This is evidenced by Father's behavior towards Mother. As previously noted, when Mother brought up a concern to Father that their oldest son had been behaving disrespectfully towards her, Father replied "if it was true he could say whatever he wants to me" and "if it's the truth I'm not going to tell him not to quote scripture."

{¶24} Following review, we find that the trial court properly performed a thorough review of the record, including a proper balancing of best interest factors, and did not abuse its discretion in ordering that Mother remain the children's residential parent and legal custodian and ordering equal parenting time.

{¶25} Assignment of Error No. 3:

{¶26} THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOCATING PARENTING TIME ON AN EQUAL BASIS, AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶27} In his third assignment of error, Father argues the trial court's decision

allocating parenting time is against the manifest weight of the evidence. Father's argument is without merit.

{¶28} Father is incorrect that the manifest weight of the evidence standard applies to his challenge to the trial court's decision regarding parenting time. It is well established that a trial court is vested with broad discretion in determining the visitation rights of a nonresidential parent, and its decision will not be reversed absent an abuse of discretion. *Warman v. Warman*, 12th Dist. Butler No. CA2016-08-170, 2017-Ohio-7462, ¶ 8.

{¶29} In this case, the trial court ordered equal parenting time in an alternating week schedule.[5] Father states that the trial court's decision includes numerous transitions but fails to explain how this arrangement negatively impacts their best interests. Furthermore, a review of this assignment of error reveals that Father is merely reasserting or repackaging the arguments made with respect to the trial court's decision on naming Mother residential parent and legal custodian. In so doing, Father summarily argues that equal parenting time is not in the children's best interest and that the "children should reside primarily with [Father] and exercise alternate weekends with [Mother]." However, for the reasons detailed in resolution of Father's first and fourth assignments of error, Father's third assignment of error is also without merit and is hereby overruled.

{¶30} Assignment of Error No. 2:

{¶31} THE TRIAL COURT ERRED BY NOT CONSIDERING TESTIMONY OR

---

5. The trial court adopted the parenting time schedule in the temporary order:

Mother: Tuesday at 6:00 p.m. to Sunday at 6:00 p.m.

Father: Sunday at 6:00 p.m. to Tuesday at 6:00 p.m.

Mother: Tuesday at 6:00 p.m. to Thursday 6:00 p.m.

Father: Thursday at 6:00 p.m. to Tuesday at 6:00 p.m.

EVALUATION OF THE PSYCHOLOGICAL EXPERT.

{¶32} In his second assignment of error, Father argues the trial court erred by not considering the testimony or evaluation of Dr. Bromberg. We disagree.

{¶33} As noted above, the trial court considered Dr. Bromberg's testimony and report but ultimately found his recommendations to be "specious." As noted in resolution of Father's first and fourth assignments of error, this finding was supported by the record. This court has previously noted that such considerations are "only one consideration that the trial court may take into account when making its best interest determination." *Albrecht*, 2015-Ohio-4916 at ¶ 25. In this case, the trial court considered the testimony presented by the psychologist, but ultimately rejected the psychologist's recommendation and found it was in the best interest of the children for Mother to be named residential parent and custodian based on additional evidence that was presented during the hearings. Father's second assignment of error is overruled.

{¶34} Assignment of Error No. 5:

{¶35} THE TRIAL COURT ERRED BY CONSIDERING FATHER'S RELIGIOUS BELIEFS IN CLEAR VIOLATION OF HIS CONSTITUTIONAL RIGHTS TO FREEDOM OF RELIGION UNDER THE FIRST AMENDMENT OF THE CONSTITUTION.

{¶36} In his fifth assignment of error, Father alleges the trial court violated his constitutional rights to freedom of religion. Father's assignment of error is without merit.

{¶37} "[P]arents have a fundamental right to educate their children, including the right to communicate their moral and religious values * * * [and] 'direct the religious upbringing of their children.'" *Suwareh v. Nwankwo*, 12th Dist. Butler No. CA2017-12-174, 2018-Ohio-3737, ¶ 29, quoting *Pater v. Pater*, 63 Ohio St.3d 393, 397 (1992). "In a custody dispute, the parents' rights must be balanced against the state's need to determine the best

interests of the child." *Pater* at 397. "[A] domestic relations court may consider the religious practices of the parents in order to protect the best interests of a child." *Id.* at 395. However, a court may not restrict a parent's right to expose his or her child to religious beliefs, "unless the conflict between the parents' religious beliefs is affecting the child's general welfare." *Id.* at paragraph two of the syllabus.

{¶38} In this case, Father presented extensive testimony and argument regarding his religious convictions. Mother expressed concerns with the TCC's teachings due to Father's intolerance regarding divorce and that he may be forcing these beliefs on his children to the detriment of Mother.

{¶39} Following review, we find that Father's constitutional rights were not violated or improperly considered in the trial court's decision. In this case, the trial court only referenced Father's religious beliefs in order to protect the best interests of the children, which is permissible under *Pater*. In this case, the trial court's entry states:

> The Court finds the Guardian ad litem's report to be instructive and verified by the testimony adduced at trial. The children love each parent and are adjusting to the emotional turmoil of separation and divorce. [Mother's] concerns about the potential influence of [Fathers'] church (Transformation Christian Church) [are] valid, given its tenet of intolerance regarding divorce. This is evidenced by the children's inappropriate comments to their mother, rationalized by their father as consistent with biblical teaching. The parenting schedule ordered herein will give [Mother] the opportunity to choose the children's church on her parenting Sundays and expose the children to alternative Christian teaching and principles.

{¶40} In so doing, the trial court did not violate Father's rights to freedom of religion or deprive him of his fundamental rights to educate his children. The trial court merely noted Mother's concern and the way these beliefs may affect the children's general welfare.

{¶41} Finally, Father summarily asserts that Mother once shared the same religious beliefs and "[i]f the Court is to consider [Father's] faith and its impact on the children, [it]

should do so for the [Mother]." However, following review, we find the trial court did not err in its handling of the religious matters in this case, an issue that was very much the focus of Father's case. Father's fifth assignment of error is without merit and is overruled.

{¶42} Assignment of Error No. 6:

{¶43} THE TRIAL COURT ERRED BY FAILING TO ISSUE FINDINGS OF FACT AND CONCLUSIONS OF LAW WHEN NOT GRANTING AN ADDITIONAL DEVIATION TO CHILD SUPPORT EVEN THOUGH APPELLANT WAS GRANTED IN EXCESS OF 147 OVERNIGHTS.

{¶44} In his sixth assignment of error, Father argues the trial court erred by failing to issue findings of fact and conclusions of law after not allowing a deviation under R.C. 3119.231. We sustain Father's sixth assignment of error.

{¶45} In the present case, the trial court ordered a ten percent deviation as Father's parenting time exceeded 90 days as provided in R.C. 3119.051. However, on March 28, 2019, shortly before the final judgment entry, R.C. 3119.231 became effective. R.C. 3119.231 provides:

> (A) If court-ordered parenting time exceeds ninety overnights per year, the court shall consider whether to grant a deviation pursuant to section 3119.22 of the Revised Code for the reason set forth in division (C) of section 3119.23 of the Revised Code. This deviation is in addition to any adjustments provided under division (A) of section 3119.051 of the Revised Code.
>
> (B) If court-ordered parenting time is equal to or exceeds one hundred forty-seven overnights per year, and the court does not grant a deviation under division (A) of this section, it shall specify in the order the facts that are the basis for the court's decision.

{¶46} Thus, R.C. 3119.231(A) provides for an additional deviation along with the deviation contained in R.C. 3119.051 and, if the overnight parenting time exceeds the overnights contained in R.C. 3119.231(B) and is not granted a deviation, the trial court "shall

specify in the order the facts that are the basis for the court's decision."

{¶47} It is undisputed that Father's parenting time exceeds 147 overnights per year. However, the trial court's entry did not grant Father the additional deviation and thus was required to "specify in the order the facts that are the basis for the court's decision" to satisfy R.C. 3119.231(B). Since these findings were not made, we sustain Father's sixth assignment of error.

{¶48} Cross-Assignment of Error No. 1:

{¶49} THE TRIAL COURT ERRED BY IMPUTING A WAGE OF $42,000 TO APPELLEE.

{¶50} In her first cross-assignment of error, Mother alleges the trial court erred by imputing $42,000 in income. The record indicates that Mother, a former schoolteacher, lost her job when she surrendered her license after there were reports she had an inappropriate relationship with a student. We find Mother's argument is without merit.

{¶51} A trial court's decision specific to whether a parent is voluntarily underemployed will not be disturbed on appeal absent an abuse of discretion. *McLaughlin v. Kessler*, 12th Dist. Fayette No. CA2011-09-021, 2012-Ohio-3317, ¶ 14. For an unemployed or underemployed parent, income is the "sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(C)(5)(b). Potential income includes imputed income that a trial court determines the parent would have earned if fully employed based upon the criteria set forth in R.C. 3119.01(C)(11)(a)(i)-(xi), which includes the parent's prior employment experience, education, skills and training, employment availability, and local wages. *Daniel v. Hester*, 12th Dist. Butler No. CA2016-02-037, 2016-Ohio-7543, ¶ 12. Before a trial court may impute income to a parent, however, it must first find that the parent is voluntarily unemployed or voluntarily underemployed. R.C.

3119.01(C)(11); Kessler at ¶ 13. The parent who claims the other parent is voluntarily underemployed bears the burden of proof. *Reynolds-Cornett v. Reynolds*, 12th Dist. Butler No. CA2013-09-175, 2014-Ohio-2893, ¶ 10.

{¶52} Following review, we find the trial court did not abuse its discretion by imputing $42,000 as Mother's income. In this case, the trial court found that Mother was voluntarily underemployed. The record reflects that Mother's 2013 tax return shows that she earned a salary of $42,000. Though Mother no longer holds a license to teach, she holds a master's degree in education and testified about certain job opportunities that she was seeking, even without the licensure. In fact, Mother testified that she was "very confident" in her "abilities to procure not even just another job, but another job with my degrees." Furthermore, the trial court indicated that Mother is currently pursuing additional educational opportunities and that she has no mental or physical problems that would prevent her from obtaining and maintaining employment. Accordingly, we find the trial court did not abuse its discretion by imputing Mother's income as $42,000. Mother's first cross-assignment of error is overruled.

{¶53} Cross-Assignment of Error No. 2:

{¶54} THE MAGISTRATE COMMITTED PLAIN ERROR IN ALLOWING THE DEPOSITION OF L.R. TO BE USED AS EVIDENCE AND THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING THE MAGISTRATE'S DECISION ON THIS ISSUE TO STAND.

{¶55} In her second cross-assignment of error, Mother argues the trial court erred by allowing the deposition of L.R., the student she allegedly had an inappropriate relationship with, to be admitted in lieu of live testimony. However, based on the trial court's decision, Mother concedes that "it would appear this issue is moot." Furthermore, we find that any such error was harmless, as the trial court's decision would have likely been the

same without the inclusion of the deposition. In this case, Mother was granted custody of the children and the trial court awarded appropriate parenting time. Mother does not contest the award of custody or the amount of parenting time.

{¶56} It is well established that an error in the admission of evidence only warrants a reversal if the error prejudices the appealing party. *Banford v. Aldrich Chem. Co. Inc.*, 126 Ohio St.3d 210, 2010-Ohio-2470, at ¶ 38; *Beard v. Meridia Huron Hosp.*, 106 Ohio St.3d 237, 2005-Ohio-4787, at ¶ 20. If a factfinder probably would have arrived at the same decision absent the occurrence of the error, then the error is harmless and will not justify reversal. *Hayward v. Summa Health Sys./Akron City Hosp.*, 139 Ohio St. 3d 238, 2014-Ohio-1913, ¶ 25; *Theobald v. Univ. of Cincinnati*, 10th Dist. Franklin No. 02AP-560, 2005-Ohio-1510, ¶ 17 ("[w]hen avoidance of the error would not have changed the outcome of the proceedings, then the error neither materially prejudices the complaining party nor affects a substantial right of the complaining party"). As a result, we overrule Mother's second cross-assignment of error.

{¶57} Judgment affirmed in part, reversed in part, and remanded.

HENDRICKSON, P.J., and M. POWELL, J., concur.