[Cite as *Vaughn v. Vaughn*, 2022-Ohio-1805.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| LINDSAY VAUGHN, | : | |
| Appellee, | : | CASE NO. CA2021-08-078 |
| | : | O P I N I O N |
| - vs - | | 5/31/2022 |
| | : | |
| JEFFERY A. VAUGHN, | : | |
| Appellant. | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. 17DR39921

Stagnaro Hannigan Koop, Co., LPA, and Michaela M. Stagnaro, for appellee.

Stafford Law Co., L.P.A., and Joseph G. Stafford and Nicole A. Cruz, for appellant.

**S. POWELL, J.**

{¶ 1} Appellant, Jeffery A. Vaughn ("Husband"), appeals from the judgment entry and decree of divorce issued by the Warren County Court of Common Pleas, Domestic Relations Division, granting his now ex-wife, appellee, Lindsay Vaughn ("Wife"), a divorce on the basis that Husband and Wife are incompatible. For the reasons outlined below, and

finding no merit to any of the arguments raised by Husband herein, we affirm.

**The Parties**

{¶ 2} Husband and Wife were married in Mason, Warren County, Ohio on October 8, 2011. There were two children born issue of the marriage, a boy, J.A.V., born on May 18, 2012, and a girl, E.C.V., born on February 24, 2015. Husband was previously employed as a financial advisor/consultant with a Series 6 securities license that provided him a yearly salary of well over $300,000 per year. Husband claims that he is now employed at a business with three other individuals where he makes closer to $60,000 per year in total income.[1] Mother works at a local pharmaceutical company that pays her a base salary of $120,000 per year, plus commission. The record indicates Mother has also worked as a barre instructor one day a week.

**Facts and Procedural History**

{¶ 3} On October 12, 2017, one day before she left the marital residence for the last time, Wife filed a complaint for divorce from Husband.[2] Several months later, on March 26, 2018, Husband filed an answer and counterclaim for divorce from Wife.[3] Husband's answer and counterclaim was filed by his then attorney, Brooke L. Logsdon. On January 4, 2019, after serving as Husband's counsel for nearly a year, Attorney Logsdon moved the domestic relations court to withdraw as counsel due to Husband's "lack of communication

---

1. Husband's Series 6 securities license was revoked by the Financial Industry Regulatory Authority in the early part of 2017 after a two-day disciplinary hearing was held on the matter in the fall of 2016. Similar to what happened in this case, which will be discussed more fully below, Husband was precluded from offering any exhibits at that disciplinary hearing because Husband missed the deadline for filing and serving his exhibit list.

2. Wife left the marital residence once before in the summer of 2016 following an alleged domestic violence incident that resulted in Husband's arrest and a protection order against Husband being put in place.

3. There was a significant delay in serving Husband with Wife's complaint for divorce. This was due, in part, to Husband intentionally letting the complaint sent to him by Wife via certified mail go unclaimed. The domestic relations court later commented that Husband's refusal to retrieve this certified mailing established early on that Husband "would not make this process easy" for Wife. The record fully supports the domestic relations court's characterization of Husband's conduct throughout this case.

and cooperation and a failure to abide by the terms of the written fee agreement." The domestic relations court granted Attorney Logsdon's motion to withdraw as Husband's counsel on January 15, 2019.

{¶ 4} On the morning of May 9, 2019, a final divorce hearing was scheduled to take place before a domestic relations court magistrate. Because Husband had not retained a new attorney, Husband was to appear at this hearing pro se. However, approximately 15 minutes before that hearing was scheduled to begin, Husband notified the domestic relations court that he would not be able to attend the hearing because he had supposedly become sick and vomited several times after eating bad Mexican food the day prior, on May 8, 2019.[4] Staff with the domestic relations court attempted to call Husband back while on the record to determine the severity of Husband's illness and whether it would be possible for Husband to participate in the final divorce hearing via phone. Husband, however, did not answer his phone.

{¶ 5} On May 10, 2019, the magistrate issued an order requiring Husband to reimburse Mother $7,700 for the costs and fees, including attorney fees, that Mother had incurred as a result of Husband's failure to appear at the May 9, 2019 final divorce hearing. That same day, the magistrate also issued a decision prohibiting Husband from presenting any evidence or witnesses (other than himself) that Husband would try to introduce at any part of what ultimately turned into a three-day final divorce hearing held on June 28, 2019, September 18, 2019, and October 7, 2020. The magistrate found such a draconian order was necessary given Husband's repeated failures to comply with the domestic relations court's local rules and apparent refusal to comply with Wife's discovery demands. This

---

4. The record indicates Husband went to an urgent care at 10:31 a.m. on the morning of May 9, 2019 complaining of nausea and vomiting. However, the medical records generated from Husband's visit to that urgent care indicate Husband's vital signs were normal, that Husband did not have a sickly appearance, and that Husband was smiling, conversing, and did not appear to be sick with food poisoning as Husband had claimed.

included Husband's failure to comply with the domestic relations court's Local Rule 3.7, entitled "Exchange of Exhibits and Witness Lists," which provides:

> Both parties shall exchange all exhibits expected to be used at trial and a list of all witnesses to be called to testify at trial at least seven days prior to trial, unless otherwise ordered.

{¶ 6} On May 24, 2019, Attorney John D. Smith and Attorney Mark D. Webb filed a notice of appearance as Husband's newly retained counsel. That same day, Attorneys Smith and Webb also filed an objection to the magistrate's decision barring Husband from presenting any evidence or calling any witnesses (other than himself) at any portion of the final divorce hearing. Shortly thereafter, on June 5, 2019, Attorneys Smith and Webb moved the domestic relations court to continue the final divorce hearing that had been rescheduled to take place on June 10, 2019. The domestic relations court granted Attorney Smith's and Attorney Webb's motion to continue and thereafter continued the final divorce hearing to June 28, 2019. The domestic relations court also remanded the matter back to the magistrate with instructions that the magistrate hear arguments on Husband's objection to the magistrate's decision.

{¶ 7} On June 18, 2019, Husband filed a shared parenting petition requesting the domestic relations court issue a shared parenting plan regarding the parties' two children, J.A.V. and E.C.V. Ten days later, on June 28, 2019, the rescheduled final divorce hearing took place. Both Husband and Wife appeared at this hearing with counsel. During this hearing, Wife's vocational expert, Dr. Carl W. Sabo, testified that Husband had a "very good work history in the past," a "very high level of employment," and, in his expert opinion, Husband could expect to earn a median yearly salary of $127,708, plus benefits. One other witness, Wife's friend, M.C., also testified at this hearing. However, because Wife was unable to complete her case-in-chief, the final divorce hearing was continued in progress to September 11, 2019. On July 30, 2019, the domestic relations court issued an order

- 4 -

pushing that final divorce hearing back one week to September 18, 2019.

{¶ 8} On September 5, 2019, under two weeks before the final divorce hearing was scheduled to resume, Attorneys Smith and Webb moved the domestic relations court to withdraw as Husband's counsel. To support their motion, the attorneys stated that "[t]he reasons for withdrawal include, but are not limited to, a breakdown in communication between Counsel and client as well as failure to comply with the representation agreement." Attorneys Smith and Webb also notified the domestic relations court that "[m]ore cause can be made known if necessary at a hearing on this matter." The domestic relations court granted Attorney Smith's and Attorney Webb's motion to withdraw as Husband's counsel on September 13, 2019.

{¶ 9} On September 18, 2019, the final divorce hearing resumed before the same domestic relations court magistrate. Given Attorney Smith's and Attorney Webb's withdrawal as Husband's counsel, Husband appeared at this hearing pro se. Upon entering his appearance, Husband moved for a continuance of the final divorce hearing to allow him time to retain yet another new attorney. The magistrate denied Husband's motion from the bench and advised Husband that he "was free to object at a later date" if he believed the magistrate erred by denying him a continuance to obtain new counsel. Wife then proceeded with her case-in-chief. This included Wife herself taking the stand to testify. Following this hearing, which concluded with Wife's direct examination, the magistrate continued the final divorce hearing in progress to November 7, 2019.

{¶ 10} On October 15, 2019, Husband, who was at that time still appearing pro se, moved the domestic relations court for a continuance of the November 7, 2019 final divorce hearing. The domestic relations court denied Husband's motion later that same day. Shortly thereafter, on October 30, 2019, Attorney John C. Kasper filed a notice of appearance as Husband's newly retained counsel. The next day, October 31, 2019,

Attorney Kasper filed a motion requesting a continuance of the final divorce hearing scheduled to take on November 7, 2019. The domestic relations court granted Attorney Kasper's motion for a continuance and thereafter rescheduled the final divorce hearing to resume on February 10, 2020.

{¶ 11} Unsurprisingly, throughout the first few months of 2020, the final divorce hearing was continued several more times due to the emergence of the COVID-19 pandemic. This ultimately resulted in the final divorce hearing being continued to, and completed on, October 7, 2020. Approximately one month prior to that hearing, however, Attorney Kasper moved the domestic relations court to withdraw as Husband's counsel "for the reason that there has been an irreparable breakdown of attorney-client communication." The domestic relations court issued a decision granting Attorney Kasper's motion to withdraw as Husband's counsel on September 23, 2020.

{¶ 12} In so holding, the domestic relations court specifically stated that the October 7, 2020 final divorce hearing would not be continued "solely based on [Husband] seeking new counsel."[5] Therefore, just as Husband had done at the final divorce hearing held on September 18, 2019, Husband also appeared at the October 7, 2020 final divorce hearing pro se. During this hearing, which Mother appeared at with counsel, the magistrate limited Wife's counsel's questioning of Wife to events that had happened in the year since Wife had testified at the September 18, 2019 final divorce hearing. The magistrate also prohibited Husband from cross-examining Wife regarding anything that she had previously testified to at the September 18, 2019 final divorce hearing.

---

5. We note that the decision and entry entered on September 23, 2020 granting Attorney Kasper's motion to withdraw as Husband's counsel was issued by a domestic relations court magistrate. Husband filed an objection to the magistrate's decision granting Attorney Kasper's motion to withdraw on September 30, 2020. However, because Husband proceeded with the final divorce hearing held on October 7, 2020 without raising the issue again, the domestic relations court found Husband's objection to the magistrate's decision granting Attorney Kasper's motion to withdraw had been rendered moot. The domestic relations court issued this decision on December 31, 2020.

{¶ 13} On October 21, 2020, Attorney Joseph G. Stafford filed a notice entering his appearance as Husband's newly retained counsel. Attorney Stafford, along with Attorney Nicole A. Cruz, have remained on as Husband's counsel ever since.

{¶ 14} On February 5, 2021, the magistrate issued a decision recommending the domestic relations court grant Wife a divorce from Husband on the grounds of incompatibility. The magistrate also recommended the domestic relations court deny Husband's petition for shared parenting. The magistrate instead recommended Wife be designated as the residential parent and legal custodian of the children, with Husband receiving parenting time based on a slightly modified basic parenting time schedule. The magistrate further recommended that, based on the expert testimony offered by Dr. Sabo, Husband's income for child support purposes should be set at $127,708. The magistrate additionally recommended the domestic relations court deny all other motions not specifically addressed within its decision. This necessarily included the motions for contempt Wife filed against Husband between August 15, 2018 and July 9, 2020.

{¶ 15} On February 18, 2021, Husband filed preliminary objections to the magistrate's decision. Father then supplemented his objections to the magistrate's decision on May 5, 2021. Within his various objections, Husband argued (1) the magistrate erred by denying his motion to continue the final divorce hearings held on September 18, 2019 and October 7, 2020 to allow him time to obtain new counsel; (2) the magistrate violated his right to due process by refusing to allow him to cross-examine Wife about topics that she had testified to at the September 18, 2019 final divorce hearing; and (3) the magistrate erred by prohibiting him from introducing any evidence or calling any witnesses during any of the three days in which the final divorce hearing was held. Husband also argued (4) the magistrate erred by denying his petition for shared parenting and designating Wife as the residential parent and legal custodian of the children; (5) the magistrate erred by "imputing

- 7 -

income" to him in the amount of $127,708 for purposes of calculating child support; and (6) the magistrate erred in its division of marital property and the classification of marital and separate property regarding, among other items, a U.S. Bank trust account.

{¶ 16} On February 26, 2021, Wife filed her own objections to the magistrate's decision. Specifically, Wife objected to the magistrate's decision implicitly overruling the motions for contempt she had filed against Husband between August 15, 2018 and July 9, 2020. To support this claim, Wife argued the magistrate erred by not finding Husband in contempt for (1) Husband's failure to pay on the domestic relations court's temporary child support order; (2) Husband's failure to abide by the domestic relations court's temporary parenting time order; and (3) Husband's failure to reimburse her for the costs and fees, including attorney fees, that she had incurred as a result of Husband's failure to appear at the final divorce hearing scheduled to take place nearly two years earlier, on May 9, 2019.

{¶ 17} On June 18, 2021, the domestic relations court issued a decision overruling Husband's objections to the magistrate's decision and sustaining Mother's objections to the magistrate's decision. In so holding, the domestic relations court initially noted this case had a "significant history" that it found to be "unprecedented." The domestic relations court also noted that "[t]he procedural posture illustrates why each of [Husband's] objections [to the magistrate's decision] must be overruled." The domestic relations court then explained, in detail, why it had come to that decision. This includes the domestic relations court stating, in pertinent part, the following:

> [Husband] chose three attorneys to represent him who have extensive experience in this Court and enjoy excellent reputations for meeting deadlines, being respectful to other attorneys and the Court, and aggressively representing their clients. The Court is not permitted to inquire about the relationship [Husband] had with any of his attorneys, such as who was at fault in the breakdown and why, but the Court knows that on all three occasions the attorneys asked this Court to withdraw as his attorney. It demonstrates [Husband] was no

more compliant with his attorneys than he was with complying with discovery demands, following Court Orders regarding disclosure of witnesses and exhibits, and communicating respectfully with [Wife].

It is unfortunate [Husband] chose not to prioritize his responsibility with his attorneys so he could have the benefit of their counsel at trial. The Court does not regard his lack of having an attorney as anything the Magistrate did to him, but rather as a choice [Husband] made that created the very risk he now complains about.

{¶ 18} The domestic relations court also noted Husband "chose to hide information, then failed to disclose his evidence," a "strategy" the domestic relations court found must lead to but one remedy: "[t]hey do not get to present their case." The domestic relations court further noted:

All of [Husband's] aggressive techniques have hurt him in the end. Had he instead been forthcoming with information from the beginning, respectful with [Wife] in his communication, and cooperative with his attorneys, this case could have been over a long time ago with [Husband] likely enjoying everything he now continues to fight for.

{¶ 19} This is in addition to the domestic relations court finding:

[Husband's] obstinance in failing to complete discovery, his disregard of support orders, and his lack of cooperative communication with [Wife] have all combined to demonstrate why he should not be a residential parent of the children in a Shared Parenting Plan.

{¶ 20} As well, as the domestic relations court found:

[T]he Court has no doubt that had [Husband] taken an hour before any of the trial dates to make sure he had complied with discovery and forwarded his proposed exhibits to [Wife's] attorney, he could have at least presented a case for a premarital interest in the U.S. Bank Trust. It is also possible that he could have proven that point even without the documentation had he projected himself in a manner that was credible. But [Husband] failed to follow the Civil Rules and Court Orders, and seemed more focused on defeating [Wife] than working cooperatively with her.

{¶ 21} The domestic relations court found the same to be true as it relates to the

- 9 -

magistrate's decision recommending Husband's income be set at $127,708 for child support purposes. The domestic relations court, in fact, specifically stated that it found Husband's testimony regarding his purported total income being closer to $60,000 per year, or, at the very least, less than $120,000 per year, lacked credibility.

{¶ 22} After addressing each of Husband's six objections, the domestic relations court then explained its decision sustaining Wife's objections to the magistrate's decision finding Husband in contempt. This ultimately resulted in the domestic relations court sentencing Husband on the contempt to a suspended 30-day jail sentence that Husband could purge by (1) making "steady payments" on his $34,500 child support arrearage, in addition to regular support payments, for a period of three years; (2) reimbursing Mother $1,000 for trial expenses she unnecessarily incurred due to Husband's absence at the May 9, 2019 final divorce; and (3) paying Mother an aggregate, total amount of $8,850 in attorney fees.

{¶ 23} On August 13, 2021, the domestic relations court issued its final judgment entry and decree of divorce. Shortly thereafter, on August 26, 2021, Husband filed a timely notice of appeal. Oral argument was held before this court on May 2, 2022. Husband's appeal now properly before this court for decision, Husband raises six assignments of error for this court's review.

**Assignment of Error No. 1:**

{¶ 24} THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY FAILING TO GRANT THE APPELLANT A REASONABLE CONTINUANCE OF THE DIVORCE TRIAL TO OBTAIN COUNSEL.

{¶ 25} In his first assignment of error, Husband argues the domestic relations court erred by overruling his objections to the magistrate's decision denying his motions to continue the September 18, 2019 and October 7, 2020 final divorce hearings to allow him

time to obtain new counsel. We disagree.

**{¶ 26}** The grant or denial of motion for a continuance is a matter entrusted to the broad and sound discretion of the domestic relations court. *Alomari v. Almajali*, 12th Dist. Butler No. CA2019-11-187, 2020-Ohio-4349, ¶ 48. Because of this, an appellate court will not disturb a domestic relations court's decision denying a motion for a continuance absent an abuse of that discretion. *Haynes v. Owens-Haynes*, 12th Dist. Clermont No. CA2008-01-003, 2008-Ohio-4963, ¶ 7 ("[a]bsent an abuse of discretion, a reviewing court will not disturb a trial court's decision denying a motion for a continuance"). An abuse of discretion means more than an error of law or judgment. *In re E.W.*, 12th Dist. Warren Nos. CA2017-01-001 thru CA2017-01-003, 2017-Ohio-7215, ¶ 21. Rather, an abuse of discretion implies that the domestic relations court's attitude was unreasonable, arbitrary, or unconscionable. *Sparks v. Sparks*, 12th Dist. Warren No. CA2015-10-095, 2016-Ohio-2896, ¶ 7, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). The vast majority of cases in which an abuse of discretion is asserted involve claims that the decision is unreasonable. *Bonifield v. Bonifield*, 12th Dist. Butler No. CA2020-02-022, 2021-Ohio-95, ¶ 11. "A decision is 'unreasonable' when there is no sound reasoning process to support it." *Vaughn v. Vaughn*, 12th Dist. Warren No. CA2007-02-021, 2007-Ohio-6569, ¶ 12, citing *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

**{¶ 27}** "[T]here is no bright line test for determining when an abuse of discretion occurs in the context of the denial of a motion for a continuance * * *." *In re Shepherd*, 4th Dist. Highland No. 97CA941, 1998 Ohio App. LEXIS 2194, *5 (May 11, 1998). Rather, in determining whether the domestic relations court abused its discretion, this court should consider several factors. *Harmon v. Baldwin*, 107 Ohio St.3d 232, 2005-Ohio-6264, ¶ 21. These factors include "(1) the length of the delay requested; (2) whether other continuances

- 11 -

have been requested and received; (3) the inconvenience to witnesses, opposing counsel, and the court; (4) whether there is a legitimate reason for the continuance; (5) whether the defendant contributed to the circumstances giving rise to the need for the continuance, and (6) other relevant factors, depending on the unique facts of each case." *Caramico v. Caramico*, 12th Dist. Clermont No. CA2015-03-025, 2015-Ohio-4232, ¶ 10, citing *Black v. Black*, 12th Dist. Clinton No. CA2008-06-022, 2009-Ohio-92, ¶ 12; and *Kirkpatrick v. Kirkpatrick*, 5th Dist. Tuscarawas No. 2014AP050018, 2015-Ohio-427, ¶ 22. These factors are used to ensure the domestic relations court "balances its interest in controlling its own docket and the public's interest in an efficient judicial system with the possibility of prejudice to the parties." *Jones v. Wall*, 12th Dist. Warren No. CA2015-10-088, 2016-Ohio-2780, ¶ 37, citing *Tener v. Tener-Tucker*, 12th Dist. Warren No. CA2004-05-061, 2005-Ohio-3892, ¶ 42.

**{¶ 28}** As noted above, Husband argues the domestic relations court erred by overruling his objections to the magistrate's decisions denying his motions to continue the September 18, 2019 and October 7, 2020 final divorce hearings to allow him time to obtain new counsel. However, just as the domestic relations court found, the record firmly establishes that Husband had already driven away three highly competent, experienced attorneys prior to the September 18, 2019 final divorce hearing, a number that Husband was able to increase to four in the weeks leading up to the final divorce hearing held on October 7, 2020. The domestic relations court found this revolving door of attorneys with reputations of aggressively advocating for their clients demonstrated Husband "was no more compliant with his attorneys than he was with complying with discovery demands, following Court Orders regarding disclosure of witnesses and exhibits, and communicating respectfully with [Wife]." The domestic relations court also found it unfortunate that Husband had chosen not to "prioritize his responsibility with his attorneys so he could have

- 12 -

the benefit of their counsel at trial," but that Husband's lack of counsel to represent him at the final divorce hearings held on September 18, 2019 and October 7, 2020 was not the result of anything the magistrate did to him. The domestic relations court instead determined that Husband being left without an attorney to represent him at the September 18, 2019 and October 7, 2020 final divorce hearings was the natural result of the choices Husband had made that "created the very risk he now complains about."

{¶ 29} After a full and thorough review of the record, which includes the transcript for both the September 18, 2019 and October 7, 2020 final divorce hearings, it is clear the domestic relations court found it was Husband, and Husband alone, who created the circumstances giving rise to the need for Husband to twice move for a continuance so that he could obtain new counsel. We agree. Husband, having already engaged in every dilatory tactic possible, was doing nothing more than trying to delay the final divorce hearings held on September 18, 2019 and October 7, 2020 even further after learning of the motions to withdraw filed by his various attorneys. The record indicates this occurred after Husband had already received multiple continuances, many of which were due to Husband's own contrived actions or feigned surprise, that ultimately resulted in this generally straightforward divorce taking multiple years rather than mere months, or possibly a year, to complete.[6] Under these circumstances, and when considering the totality of the record, it was not error for the domestic relations court to overrule Husband's objection to the magistrate's decision denying his motions to continue the September 18, 2019 and

---

6. For example, Husband claims he did not know Attorneys Smith and Webb had moved to withdraw as his counsel until September 16, 2019, two days before the September 18, 2019 final divorce hearing was scheduled to begin. The record does not support this claim and instead indicates Attorneys Smith and Webb both mailed and e-mailed their motion to withdraw to Husband on September 4, 2019. Husband claims within his appellate brief that the magistrate learned of this through an "improper investigation" made "off the record" in violation of the Ohio Rules of Evidence and the Ohio Code of Judicial Conduct. This court disagrees with Husband's characterization of what transpired at the September 18, 2019 final divorce hearing and finds nothing untoward about the magistrate's conduct in attempting to verify Husband's claims, which, as it turns out, proved to be false.

October 7, 2020 final divorce hearings to allow him time to obtain new counsel. Therefore, finding no error, Husband's first assignment of error lacks merit and is overruled.

**Assignment of Error No. 2:**

{¶ 30} THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY VIOLATING THE APPELLANT'S RIGHT TO DUE PROCESS AND RIGHT TO CROSS-EXAMINATION OF WITNESSES.

{¶ 31} In his second assignment of error, Husband initially argues it was error for the domestic relations court to overrule his objection to the magistrate's decision barring him from presenting any evidence or calling any witnesses (other than himself) during any part of the three-day final divorce hearing. To support this claim, Husband argues that denying him the ability to present his case constitutes a violation of his due process rights. The magistrate, however, did not simply decide on a whim that it was going to prohibit Husband from presenting his case due to some perceived bias against him. The magistrate even stated, on the record, that Husband had "never offended" the magistrate and that the magistrate was not mad at Husband. The record instead indicates the magistrate issued this decision as a discovery sanction based on Husband's repeated failures to comply with the domestic relations court's local rules and apparent refusal to comply with Wife's discovery demands. As noted above, this included Husband's failure to comply with the domestic relations court's Local Rule 3.7, entitled "Exchange of Exhibits and Witness Lists," which provides:

> Both parties shall exchange all exhibits expected to be used at
> trial and a list of all witnesses to be called to testify at trial at
> least seven days prior to trial, unless otherwise ordered.

{¶ 32} The domestic relations court overruled Husband's objection upon finding Husband "chose to hide information, then failed to disclose his evidence, and there can only be one remedy when litigants elect this 'strategy.' They do not get to present their case."

We find no error in the domestic relations court's decision.[7] That is to say, we find the discovery sanction imposed by the magistrate, which was subsequently affirmed and adopted by the domestic relations court, was not an abuse of discretion. *See Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256 (1996) ("The discovery rules give the trial court great latitude in crafting sanctions to fit discovery abuses. A reviewing court's responsibility is merely to review these rulings for an abuse of discretion."). This is because, under the facts and circumstances of this case, imposing that type of discovery sanction for Husband's willful noncompliance with the domestic relations court's local rules and Wife's discovery demands was not arbitrary, unreasonable, or unconscionable. *See Nead v. Brown Cty. Gen. Hosp.*, 12th Dist. Brown No. CA2005-09-018, 2007-Ohio-2443, ¶ 17 ("exclusion of otherwise reliable and probative evidence is an extreme sanction for a discovery violation and a trial court should exclude evidence only when clearly necessary to enforce willful noncompliance or to prevent unfair surprise"); *see, e.g., Black v. Hicks*, 8th Dist. Cuyahoga No. ¶ 108958, 2020-Ohio-3976, ¶ 61 (exclusion of evidence as a discovery sanction "was warranted by appellants' utter failure to comply with [appellee's] discovery requests"). Therefore, finding no error, Husband's first argument lacks merit.

{¶ 33} Husband also argues it was error for the domestic relations court to overrule his objection to the magistrate's decision barring him from cross-examining Wife at the October 7, 2020 final divorce hearing about matters that Wife had testified to at the final divorce hearing held on September 18, 2019. This court, just like the domestic relations

---

7. Husband tried to introduce several exhibits at the final divorce hearing held on October 7, 2020. The magistrate refused to accept any of Husband's exhibits noting that it did not matter that Husband was at that time appearing pro se because "whether it was Attorney Kasper, Attorney Smith, or Attorney Webb representing you, none of those were coming in the record" given its earlier May 10, 2019 decision. The magistrate explained that the same was not true for Wife "because she followed the rules of evidence. You did not. Therefore, the penalty is you can't present the exhibits." The magistrate further explained to Husband "that's not a you thing. If it was Mr. Webb here, if it's Mr. Kaspar, I would tell them what I'm telling you. You've already missed the deadline, you can't present it."

court before us, believes the magistrate should have given Husband the full opportunity to cross-examine Wife regarding the testimony she provided at both the September 18, 2019 and October 7, 2020 final divorce hearings. However, upon review of the transcript of the October 7, 2020 final divorce hearing, it is clear that Husband did not proffer what he believed Wife would testify to had he been given that opportunity. "'[W]e adhere to the long-standing rule that a reviewing court will uphold the trial court's decision to exclude evidence if the record does not contain a proffer.'" *Clamp v. Szekeres*, 5th Dist. Stark No. CA-9103, 1993 Ohio App. LEXIS 1601, *3 (Mar. 15, 1993), quoting *State v. Chapin*, 67 Ohio St.2d 437, 444 (1981).

{¶ 34} This holds true even in circumstances such as these where Husband was at that time appearing pro se. This is because pro se litigants are "not to be accorded greater rights and must accept the results of their own mistakes and errors, including those related to correct legal procedure." *Cox v. Zimmerman*, 12th Dist. Clermont No. CA2011-03-022, 2012-Ohio-226, ¶ 21. Therefore, because this court has nothing to review, Husband cannot demonstrate any resulting prejudice from the domestic relations court's decision. *See, e.g., Fox v. Fox*, 12th Dist. Clermont No. CA2013-08-066, 2014-Ohio-1887, ¶ 12-17 (domestic relations court did not abuse its discretion in excluding so-called "pre-divorce evidence of the relationship between Wife and [another man]" where "Husband did not proffer the substance of the evidence into the record"). Accordingly, finding no error, Husband's second argument also lacks merit.

{¶ 35} In light of the foregoing, and finding no merit to either of the two arguments raised by Husband herein in support of his second assignment of error, Husband's second assignment of error lacks merit and is overruled.

**Assignment of Error No. 3:**

{¶ 36} THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS

DISCRETION BY ISSUING AN UNREASONABLE AND ARBITRARY PURGE ORDER THAT IS IMPOSSIBLE TO COMPLY WITH.

{¶ 37} In his third assignment of error, Husband argues the domestic relations court erred by issuing an unreasonable and arbitrary purge order that was impossible for him to comply with. We disagree.

{¶ 38} "A [domestic relations] court may employ sanctions to coerce a party who is in contempt into complying with a court order." *Rose v. Rose*, 8th Dist. Cuyahoga No. 99933, 2013-Ohio-5136, ¶ 7. However, "[i]n a case such as this one, involving a finding of civil contempt, a court must provide the contemnor a reasonable opportunity to purge the contempt." *Cornell v. Shain*, 1st Dist. Hamilton No. C-19072, 2021-Ohio-2094, ¶ 46, citing *Burchett v. Miller*, 123 Ohio App.3d 550, 552 (6th Dist.1997). "A trial court abuses its discretion when it orders conditions for purging that are unreasonable or impossible for the contemnor to meet." *Mackowiak v. Mackowiak*, 12th Dist. Fayette No. CA2010-04-009, 2011-Ohio-3013, ¶ 51. "The determination of whether a particular purge condition is unreasonable or impossible varies on a case-by-case basis." *Schuman v. Cranford*, 4th Dist. Vinton No. 02CA571, 2003-Ohio-2117, ¶ 11. "Unsubstantiated claims of financial difficulties do not establish an impossibility defense to a contempt charge." *Wagshul v. Wagshul*, 2d Dist. Montgomery No. 23564, 2010-Ohio-3120, ¶ 41; *Pettit v. Pettit*, 8th Dist. Cuyahoga No. 64582, 1993 Ohio LEXIS 6200, *12 (Dec. 23, 1993) ("[a]n unsupported statement of 'I have been broke' will not establish an inability to comply with a court order of child support").

{¶ 39} In this case, we can find no abuse of discretion in the domestic relations court's decision setting purge conditions that required Husband to (1) make "steady payments" on his $34,500 child support arrearage, in addition to regular child support, for a period of three years; (2) reimburse Mother $1,000 for the expenses she unnecessarily

incurred due to Husband's absence at the originally scheduled May 9, 2019 final divorce hearing; and (3) pay Mother an aggregate, total amount of $8,850 in attorney fees.[8] The record indicates Husband received more than enough money following his divorce from Wife to make these payments in the timeframe specified by the domestic relations court had Husband not continued doing everything in his power to avoid actually doing so. This is particularly true here when considering the record indicates Husband had paid thousands of dollars in country club membership fees during the pendency of this case rather than make any meaningful payments towards the domestic relations court's temporary child support order.[9] "A contemnor's unsupported claims of financial difficulty or an inability to pay are insufficient to establish that the trial court's conditions are unreasonable." *In re I.L.J.*, 8th Dist. Cuyahoga No. 109564, 2020-Ohio-5434, ¶ 14. Therefore, finding nothing unreasonable, arbitrary, or impossible in the domestic relations court's purge order, Husband's third assignment of error lacks merit and is overruled.

**Assignment of Error No. 4:**

{¶ 40} THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ITS ALLOCATION OF PARENTAL RIGHTS AND RESPONSIBILITIES OF THE PARTIES' MINOR CHILDREN.

{¶ 41} In his third assignment of error, Husband argues the domestic relations court erred by overruling his objection to the magistrate's decision denying his petition for shared

---

8. The domestic relations court ordered Husband reimburse Mother the $1,000 in expenses and to pay Mother the $8,850 in attorney fees by August 15, 2021. Husband claims this only gave him two days to make those payments. This is incorrect. The domestic relations court's decision ordering Husband to make those payments was issued on June 18, 2021, not August 13, 2021. Therefore, Husband was actually given 58 days to make those payments, not two.

9. Husband did admit, however, to making $500 monthly child support payments to his other ex-wife with whom he has another child who is now in his teens. The record indicates this other child support order was put into place in 2013 when Husband was making $260,000 per year. The record also indicates that Husband had never attempted to modify that child support order despite Husband now claiming within these divorce proceedings that his total income had decreased by $200,000 to $60,000.

parenting and designating Wife as the residential parent and legal custodian of their two children. We disagree.

{¶ 42} "R.C. 3109.04 governs the award of parental rights and responsibilities." *Lykins v. Lykins*, 12th Dist. Clermont Nos. CA2017-06-028 and CA2017-06-032, 2018-Ohio-2144, ¶ 21. In making this determination, the primary concern is the best interest of the child. *Albrecht v. Albrecht*, 12th Dist. Butler Nos. CA2014-12-240 and CA2014-12-245, 2015-Ohio-4916, ¶ 22. To determine what is in the best interest of a child, R.C. 3109.04(F)(1) requires the domestic relations court to consider all relevant factors. *Bristow v. Bristow*, 12th Dist. Butler No. CA2009-05-139, 2010-Ohio-3469, ¶ 8. These factors include, but are not limited to: (1) the wishes of the parents; (2) the child's interaction and interrelationship with his parents, siblings, and other persons who may significantly affect the child's best interest; (3) the child's adjustment to home, school, and community; (4) the mental and physical health of all persons involved; and (5) the likelihood that the caregiver would honor and facilitate visitation and parenting time. *Denier v. Carnes-Denier*, 12th Dist. Warren No. CA2015-11-106, 2016-Ohio-4998, ¶ 14. "[N]o single factor is determinative of the best interest of a child; rather, the determination should be made in light of the totality of the circumstances." *Suess v. Suess*, 12th Dist. Warren Nos. CA96-01-006 and CA96-01-008, 1996 Ohio App. LEXIS 4400, *6 (Oct. 7, 1996).

{¶ 43} "When determining whether shared parenting is in a child's best interest, the [domestic relations] court must consider the additional factors set forth in R.C. 3109.04(F)(2)." *Chaney v. Chaney*, 12th Dist. Warren No. CA2021-09-087, 2022-Ohio-1442, ¶ 37, citing *Adkins v. Adkins*, 12th Dist. Butler No. CA2016-12-227, 2017-Ohio-8636, ¶ 11. These factors are (1) the ability of the parents to cooperate and make decisions jointly, with respect to the child; (2) the ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent; (3) any history or

potential for abuse; (4) the geographic proximity of the parents to one another; (5) and the recommendation of the guardian ad litem, if the child has a guardian ad litem. R.C. 3109.04(F)(2)(a) thru (e). "While no factor in R.C. 3109.04(F)(2) is dispositive, effective communication and cooperation between the parties is paramount in successful shared parenting." *Seng v. Seng*, 12th Dist. Clermont No. CA2007-12-120, 2008-Ohio-6758, ¶ 21. An appellate court reviews a domestic relations court's custody determination for an abuse of discretion. *Blessing v. Blessing*, 12th Dist. Clermont No. CA2019-01-011, 2019-Ohio-3951, ¶ 13.

{¶ 44} The domestic relations court did not err by denying Husband's objection to the magistrate's decision to deny Husband's petition for shared parenting. The domestic relations court also did not err by denying Husband's objection to the magistrate's decision designating Wife as residential parent and legal custodian. In reaching this decision, we believe the magistrate said it best in its February 5, 2021 decision:

> The inability to communicate effectively renders the concept of shared parenting not in the best interest of [J.A.V.] and [E.C.V.]
>
> Further, throughout the pendency of this case [Husband] has demonstrated he is not interested in working with [Wife]. Rather, [Husband] prefers to belittle [Wife], at times in front of the children, drive by [Wife's] residence to make [Wife] uncomfortable, object during questioning at trial to make sure Mother's sister refers to herself as "stepsister," and in general has not provided any examples of actions he has taken to improve the situation for [Wife] and the children.[10]
>
> Requesting shared parenting is easy. However, [Husband] has failed to demonstrate how shared parenting would benefit [J.A.V.] and [E.C.V.], or what procedures he has implemented to help his communication with [Wife].

---

10. The record indicates the comments Husband made to Wife in front of their two children include, but are not limited to, Husband calling Wife a "bitch" and a "gold digger," Husband sarcastically referring to Wife as "mother of the year," and Husband stating to Wife that he was going to "bury her ass" in these divorce proceedings. The record also indicates Husband gave an anniversary card to Wife signed by both children after Wife filed her complaint for divorce.

{¶ 45} The fact that Husband clearly loves his children and wants to be with them does not change this decision. This is because, as noted above, the primary concern is J.A.V.'s and E.C.V.'s best interest, not whether Father loves, cares for, and wants to be with his children. *See Hall v. Hall*, 12th Dist. Butler No. CA2018-05-091, 2019-Ohio-81, ¶ 26 (a father's "wishes about the care and control of his children * * * should not be placed above the children's best interests"). To hold otherwise would render the best-interest factors set forth in R.C. 3109.04(F)(1) and R.C. 3109.04(F)(2) meaningless to a domestic relations court when awarding parental rights and responsibilities under R.C. 3109.04. That is not what the law plainly states. Therefore, finding no error, Husband's fourth assignment of error lacks merit and is overruled.

### Assignment of Error No. 5:

{¶ 46} THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY IMPUTING INCOME TO THE APPELLANT IN THE AMOUNT OF $127,708.00 FOR THE CALCULATION OF CHILD SUPPORT.

{¶ 47} In his fifth assignment of error, Husband argues the domestic relations court erred by overruling his objection to the magistrate's decision "imputing income" to him in the amount of $127,708 for child support purposes. The domestic relations court, however, did not "impute income" to Husband. The domestic relations court, just like the magistrate before it, instead accepted the only evidence establishing Husband's income that the domestic relations court found credible: the expert testimony offered by Wife's vocational expert, Dr. Carl W. Sabo. Therefore, given the domestic relations court's finding no credible evidence was presented indicating Husband's total income was closer to $60,000 per year, or, at the very least, less than $120,000 per year, we find the domestic relations court did not err by overruling Husband's objection to the magistrate's decision "imputing income" to him in the amount of $127,708 for child support purposes. Accordingly, finding no error,

Husband's fifth assignment of error is overruled.

**Assignment of Error No. 6:**

{¶ 48} THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN ITS DIVISION OF PROPERTY AND THE CLASSIFICATION OF MARITAL AND SEPARATE PROPERTY.

{¶ 49} In his sixth assignment of error, Husband initially argues the domestic relations court erred by overruling his objection to the magistrate's decision finding the proper date to value his and Wife's financial accounts for property division purposes was October 12, 2017, the date that Wife filed her complaint for divorce. We disagree.

{¶ 50} "Generally, the proper date for the termination of a marriage, for purposes of property division, is the date of the final divorce hearing." *Dellinger v. Dellinger*, 12th Dist. Butler No. CA2015-12-229, 2016-Ohio-4995, ¶ 20, citing *Fillis v. Fillis*, 12th Dist. Clermont No. CA2008-10-093, 2009-Ohio-2808, ¶ 8. This is a "statutory presumption" that is set forth under R.C. 3105.171(A)(2)(a). *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 24. However, pursuant to R.C. 3105.171(A)(2)(b), if the domestic relations court finds the time period between the date of the marriage and the date of the final divorce hearing would be "inequitable," the domestic relations court may select dates that it considers equitable in determining marital property. *See Doyle v. Doyle*, 12th Dist. Warren No. CA2006-02-027, 2007-Ohio-2554, ¶ 15. Because the domestic relations court has broad discretion to select dates it considers equitable, and because the determination of the termination date of a marriage is largely a question of fact, this court will not disturb the domestic relations court's finding absent an abuse of discretion. *Roberts v. Roberts*, 12th Dist. Clinton Nos. CA2012-07-015 and CA2012-07-016, 2013-Ohio-1733, ¶ 28. "The abuse of discretion standard is based upon the principle that a trial court must have the discretion in domestic relations matters to do what is equitable given the facts and

- 22 -

circumstances of each case." *Jefferies v. Stanzak*, 135 Ohio App.3d 176, 179 (12th Dist.1999), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989)

{¶ 51} After a full and thorough review of the record, we find no error in the domestic relations court's decision finding the date Wife filed her complaint for divorce, October 12, 2017, was the proper date to value his and Wife's financial accounts for property division purposes. This is because, as the record indicates, this was the closest date upon which the domestic relations court was provided credible, documentary evidence as to the valuation of those disputed financial accounts. This is also because, as this court has stated previously, "the act of filing a divorce complaint formally and clearly shows the spouse's intent regarding the marriage." *Roberts*, 2013-Ohio-1733, at ¶ 29 (domestic relations court did not err by using the date that appellee filed for divorce as an equitable termination date of a marriage for purposes of property division given "the lengthy history" of the case and the "somewhat complicated financial transactions and appraisals" involved in the divorce proceedings). That the domestic relations court never made an explicit "equitable" finding is immaterial. Nothing within R.C. 3105.171(A)(2)(b) requires the domestic relations court to explicitly state an "equitable" or "inequitable" finding. The statute only requires the domestic relations court to "select dates that it considers equitable in determining marital property" if it "determines that the use of either or both of the dates specified [R.C. 3105.171(A)(2)(a)] would be inequitable." That is exactly what the domestic relations court did here.

{¶ 52} In so holding, we note that Husband does not specifically state what date he believes the domestic relations court should have used to value his and Wife's financial accounts for property division purposes. Husband merely claims the domestic relations court should have used "the date of the divorce hearing." But, as set forth in the recitation of facts above, given the numerous continuances the domestic relations court afforded

Husband throughout the pendency of this case, the final divorce hearing took place on three different dates that spanned over a year. Under these circumstances, it was certainly reasonable for the domestic relations court to select a specific date, like the date that Wife filed her complaint for divorce, rather than some other date before, after, or somewhere in between. Had that been the case, we are certain that Husband would have objected to that date, as well. Therefore, finding no error in the domestic relations court's decision finding the date Wife filed her complaint for divorce, October 12, 2017, was the proper date to value Husband's and Wife's financial accounts for property division purposes, Husband's first argument lacks merit.

{¶ 53} Husband also argues the domestic relations court erred by overruling his objection to the magistrate's decision classifying his and Wife's marital and separate property. To support this argument, however, Husband states only that:

> the trial court erred in allocating [Husband's] separate property to [Wife] and in the determination of marital and separate property. The trial court's exclusion of evidence by [Husband] prevented him from establishing his separate property interests in the PNC Trust account x3515 and resulted in an inequitable and unjust division of property.

This type of argument is a clear violation of App.R. 16(A)(7), an argument that this court may disregard in accordance with App.R. 12(A)(2). *See, e.g., Ossai-Charles v. Charles*, 12th Dist. Warren Nos. CA2010-12-129 and CA2011-01-007, 2011-Ohio-3766, ¶ 21 (citing App.R. 12[A][2] in a divorce case when declining to address the appellant's argument alleging the domestic relations court erred by "failing to hold [appellee] responsible for their children's past due healthcare expenses" because appellant "failed to comply" with App.R. 16[A][7]); *In re L.S.*, 12th Dist. Brown Nos. CA2019-03-001 and CA2019-03-002, 2019-Ohio-3143, ¶ 27, fn. 8 (citing App.R. 12[A][2] in a permanent custody case when declining to address appellant's ineffective assistance of counsel claim given that appellant "did not

take the time to support his argument in even the most basic of terms" as required by App.R. 16[A][7]).

{¶ 54} However, even when ignoring this clear violation of the Ohio Rules of Appellate Procedure, we find no error in the domestic relations court's decision classifying any Husband's and Wife's marital and separate property. This includes the PNC Bank trust account specifically identified by Husband within this assignment of error. This is because, just like with many of Husband's and Wife's other assets, the record is devoid of any evidence the PNC Bank trust account at issue held any monies that were earned by either Husband or Wife prior to their marriage on October 8, 2011. "The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 16, citing *Zollar v. Zollar*, 12th Dist. Butler No. CA2008-03-065, 2009-Ohio-1008, ¶ 9. Therefore, given the record properly before this court, the domestic relations court did not err by classifying the PNC Bank trust account as marital property and dividing the monies held within that account equally between Husband and Wife. Accordingly, finding no error, Husband's second argument also lacks merit.

{¶ 55} In light of the foregoing, and finding no merit to either of the two arguments Husband raised herein in support of his sixth assignment of error, Husband's sixth assignment of error lacks merit and is overruled.

## Conclusion

{¶ 56} For the reasons outlined more fully above, and finding no merit to any of the arguments raised herein, Husband's six assignments of error lack merit and are overruled.

{¶ 57} Judgment affirmed.

M. POWELL, P.J., and PIPER, J., concur.

- 25 -