[Cite as *Porter v. Porter*, 2024-Ohio-1413.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| MIA PORTER, | : | |
| Appellee, | : | CASE NO. CA2023-07-086 |
| | : | O P I N I O N |
| - vs - | | 4/15/2024 |
| | : | |
| DORSEY PORTER, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DR21 06 0457

Muhammad Hamidullah, for appellee.

Victor Dwayne Sims, for appellant.

**S. POWELL, P.J.**

{¶ 1} Appellant, Dorsey Porter ("Husband"), appeals from the final divorce decree issued by the Butler County Court of Common Pleas, Domestic Relations Division, terminating his marriage to Mia Porter ("Wife"). For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} On February 14, 2005, Husband and Wife were married in Butler County, Ohio. There were no children born issue of the marriage. Husband is a skilled specialized

mechanic who, prior to the COVID-19 pandemic, had been employed by Lamborghini car dealerships throughout the country. This includes positions in Florida, Missouri, New York, and Virginia. Wife moved with Husband to each of those four states and secured employment for herself each time earning an annual salary of just over $39,000.[1] Husband has since gained employment with American Airlines in California where in both 2020 and 2021 Husband received an annual salary of approximately $82,000.

{¶ 3} On June 8, 2021, after more than 16 years of marriage, Wife filed for divorce from Husband. Wife did this based on Husband's alleged gross neglect of duty and her and Husband's purported incompatibility. Husband filed an answer and counterclaim for divorce from Wife on September 23, 2021.

{¶ 4} On December 12, 2022, the domestic relations court held a final divorce hearing. There is no dispute that on the date of the final divorce hearing Husband was 51 years old and living in the San Francisco, California area, whereas Wife was 44 years old and living in Middletown, Ohio.[2] The domestic relations court heard testimony from both Husband and Wife during the final divorce hearing. Husband and Wife also introduced several exhibits for the domestic relations court's consideration. This included both Husband's and Wife's affidavits of their anticipated monthly expenses, wherein Husband claimed his anticipated expenses living in California were $3,000 a month, while Wife claimed her anticipated monthly living expenses in Ohio were $2,600 per month.

{¶ 5} On January 31, 2023, the domestic relations court issued a decision granting Husband and Wife a divorce on the grounds of incompatibility. In so doing, the

---

1. The record indicates that Wife is also employed as a singer and performer. However, neither Husband nor Wife provided any evidence regarding the amount of income, if any, that Wife earned from singing and/or performing.

2. The record indicates that Husband lives in Mountain View, California, a city located in the area between San Francisco and San Jose.

domestic relations court determined that the proper termination date of the marriage was the date that the final divorce hearing took place, December 12, 2022. This resulted in the domestic relations court awarding Wife one-half the marital portion of Husband's 401(K) earned during the marriage while Husband was employed with American Airlines.[3] The domestic relations court also ordered Husband to pay Wife spousal support in the amount of $900 per month for a period of five years.[4] The domestic relations court determined that this spousal support award was appropriate and reasonable given "the age of the parties, the 17 year marriage; the disparity of income; the property division herein; the tax consequences for Husband and Wife; the disparity in earning potential of the parties; [and] the parties' good standard of living during the marriage."

### Husband's Appeal and Two Assignments of Error

**{¶ 6}** On June 29, 2023, the domestic relations court issued judgment entry and final decree of divorce, thereby completing Husband's and Wife's separation. The following month, on July 27, 2023, Husband filed a notice of appeal from the domestic relations court's final divorce decree. Oral argument was thereafter had before this court on March 4, 2024. Husband's appeal now properly before this court for decision, Husband has raised two assignments of error for review.

**{¶ 7}** Assignment of Error No. 1:

**{¶ 8}** THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO SELECT A MARRIAGE TERMINATION DATE.

**{¶ 9}** In his first assignment of error, Husband argues the domestic relations court erred by using the date of the final divorce hearing, December 12, 2022, as the de facto

---

3. This amounted to Wife receiving approximately $11,000 from Husband's 401(K) with American Airlines.

4 This would result in Husband paying Wife a total of $10,800 in spousal support annually, or $54,000 at the end of five years, assuming Wife did not pass away, remarry, or cohabitate with another individual during that time.

termination date of his and Wife's marriage for property division purposes. We disagree.

{¶ 10} "Generally, the proper date for the termination of a marriage, for purposes of property division, is the date of the final divorce hearing." *Dellinger v. Dellinger*, 12th Dist. Butler No. CA2015-12-229, 2016-Ohio-4995, ¶ 20, citing *Fillis v. Fillis*, 12th Dist. Clermont No. CA2008-10-093, 2009-Ohio-2808, ¶ 8. This is a "statutory presumption" that is set forth under R.C. 3105.171(A)(2)(a). *Williams v. Williams*, 12th Dist. Warren No. CA2012-08-074, 2013-Ohio-3318, ¶ 24. Specifically, pursuant to R.C. 3105.171(A)(2)(a), the term "during the marriage" means "the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation."

{¶ 11} "However, pursuant to R.C. 3105.171(A)(2)(b), if the domestic relations court finds the time period between the date of the marriage and the date of the final divorce hearing would be 'inequitable,' the domestic relations court may select dates that it considers equitable in determining marital property." *Waligura v. Waligura*, 12th Dist. Clermont No. CA2022-11-076, 2023-Ohio-3747, ¶ 30. To do this, the domestic relations court need not make an explicit "equitable" or "inequitable" finding. *Vaughn v. Vaughn*, 12th Dist. Warren No. CA2021-08-078, 2022-Ohio-1805, ¶ 51. Rather, based on the plain language of the statute, the domestic relations court is merely required to "select dates that it considers equitable in determining marital property" if the court determines that using either the date of the marriage or the date of the final divorce hearing "would be inequitable." *Id.*

{¶ 12} Because the domestic relations court has broad discretion to select dates it considers equitable, and because a domestic relations court's determination of the termination date of a marriage is largely a question of fact, this court will not disturb the domestic relations court's decision setting the termination date of a marriage absent an

abuse of discretion. *Roberts v. Roberts*, 12th Dist. Clinton Nos. CA2012-07-015 and CA2012-07-016, 2013-Ohio-1733, ¶ 28. "The abuse of discretion standard is based upon the principle that a trial court must have the discretion in domestic relations matters to do what is equitable given the facts and circumstances of each case." *Jefferies v. Stanzak*, 135 Ohio App.3d 176, 179 (12th Dist.1999), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). This is why "[a]n abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the [domestic relations] court acted unreasonably, arbitrarily or unconscionably." *Oliver v. Oliver*, 12th Dist. Butler No. CA2011-01-004, 2011-Ohio-6345, ¶ 15, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 13} "The vast majority of cases in which an abuse of discretion is asserted involve claims that the decision is unreasonable." *Bonifield v. Bonifield*, 12th Dist. Butler No. CA2020-02-022, 2021-Ohio-95, ¶ 11. "A decision is unreasonable where it is not supported by a sound reasoning process." *Nwafo v. Ugwualor*, 12th Dist. Butler No. CA2023-05-055, 2024-Ohio-189, ¶ 11. "An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard." *Campbell v. 1 Spring, LLC*, 10th Dist. Franklin No. 19AP-368, 2020-Ohio-3190, ¶ 9. "[A]n unconscionable decision is one that affronts the sense of justice, decency, or reasonableness." *Schaible v. Schaible*, 12th Dist. Clermont No. CA2022-06-029, 2022-Ohio-4717, ¶ 24.

{¶ 14} As noted above, Husband argues the domestic relations court erred by using the date of the final divorce hearing, December 12, 2022, as the de facto termination date of his and Wife's marriage for property division purposes. This is because, according to Husband, he and Wife "began living separate and apart" over two years earlier, in February of 2019, when he moved from Virginia to California and began working for American Airlines, and "[t]here is no evidence that the parties ever lived together again

or reconciled in any way," either "financially" or "physically."[5] However, as a simple review of the record reveals, Husband never argued or moved the domestic relations court to use a date other than the date on which the final divorce hearing took place as the de facto termination date of his and Wife's marriage.

{¶ 15} The record also indicates that Husband's move from Virginia to California was never intended to be permanent. The record instead indicates that Husband's move to California was supposed to be temporary relocation for work that was to last only a few months before both he and Wife moved to Ohio so that Wife could be closer to her ailing father. Under these circumstances, particularly when considering Husband never offered the domestic relations court any other alternative date, we find no error in the domestic relations court using the date of the final divorce hearing, December 12, 2022, as the de facto termination date of the marriage for property division purposes. Accordingly, finding no error in the domestic relations court's decision, Husband's first assignment of error lacks merit and is overruled.

{¶ 16} Assignment of Error No. 2:

{¶ 17} THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING SPOUSAL SUPPORT.

{¶ 18} In his second assignment of error, Husband argues the domestic relations court erred by ordering him to pay Wife monthly spousal support in the amount of $900 for a period of five years. We disagree.

{¶ 19} In divorce proceedings, after the domestic relations court determines the division or disbursement of property, the domestic relations court "may award 'reasonable spousal support' to either party." *Carson v. Manubay*, 12th Dist. Butler No. CA2022-11-

___

5. We note that, in his answer to Wife's complaint for divorce, Husband claimed that he moved to California in 2016, rather than in 2019, as he alleges in his appellate brief.

107, 2023-Ohio-2015, ¶ 36, quoting R.C. 3105.18(B). "In determining whether spousal support is appropriate and reasonable, the [domestic relations] court has a statutory duty to base its spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1)." *Lykins v. Lykins*, 12th Dist. Clermont Nos. CA2017-06-028 and CA2017-06-032, 2018-Ohio-2144, ¶ 40. "R.C. 3105.18(C)(1) contains 14 factors that the [domestic relations] court must consider in determining if spousal support is appropriate." *Casper v. Casper*, 12th Dist. Warren Nos. CA2012-12-128 and CA2012-12-129, 2013-Ohio-4329, ¶ 40.

{¶ 20} These 14 factors include, but are not limited to, the income of the parties, the relative earning abilities of the parties, the retirement benefits of the parties, the ages and physical, mental, and emotional conditions of the parties, the duration of marriage, the standard of living of the parties established during the marriage, the relative extent of education of parties, and the relative assets and liabilities of the parties. R.C. 3105.18(C)(1)(a), (b), (c), (d), (e), (g), (h), and (i). "A reviewing court will presume each factor was considered, absent evidence to the contrary." *Bobie v. Bobie*, 12th Dist. Butler No. CA2022-12-119, 2023-Ohio-3293, ¶ 63. This court "will not disturb a spousal support award on appeal absent an abuse of discretion." *Smith v. Smith*, 12th Dist. Clermont No. CA2016-08-059, 2017-Ohio-7463, ¶ 24. As noted above, an abuse of discretion "requires a finding that the [domestic relations] court acted unreasonably, arbitrarily or unconscionably." *Oliver*, 2011-Ohio-6345 at ¶ 15, citing *Blakemore*, 5 Ohio St.3d at 219.

{¶ 21} Rather than challenging the amount or duration of the spousal support award the domestic relations court afforded to Wife, Husband argues it was error for the domestic relations court to order him to pay *any* spousal support to Wife at all. To support this claim, Husband argues that ordering him to pay Wife spousal support is not appropriate in this case when considering the cost of living for a single person in the San

Francisco area where he lives is much greater than the cost of living for a single person in Middletown where Wife lives. Therefore, according to Husband, ordering him to pay Wife spousal support under these circumstances "provides ample funds for wife to work and live and strips husband of that ability" and is akin to stealing away his "livelihood" while at the same time creating "a bonus for wife based on income created by husband after the parties stopped living together or sharing financial obligations," and is tantamount to a "taking" of his hard-earned money and leaving him "in poverty while enhancing Wife's lifestyle resulting in an unjust and inequitable outcome."

{¶ 22} However, while the cost of living between the San Francisco area and Middletown may very well be different, maybe even drastically so, given the record in this case, the domestic relations court found Wife's anticipated monthly expenses in Ohio were $2,600, whereas Husband's anticipated living expenses in California were just $400 more at $3,000. The domestic relations court made this finding based upon Husband's and Wife's own affidavits wherein they each set forth the monthly expenses they expected to pay once their divorce was finalized. Under these circumstances, and when considering Husband's and Wife's ages, the duration of Husband and Wife's marriage, and the disparity in Husband's and Wife's respective incomes, the domestic relations court did not err by ordering Husband to pay Wife monthly spousal support in the amount of $900 for a period of five years.[6] Accordingly, Husband's second assignment of error also lacks merit and is overruled.

**Conclusion**

{¶ 23} For the reasons outlined above, and finding no merit to either of Husband's

---

6. We note that, if Husband would like to pay less in living expenses, there is nothing in the record to indicate Husband could not make that a reality by taking his skills as a specialized mechanic to some other part of the country, something the record indicates Husband did on at least four separate occasions during his marriage to Wife.

two assignments of error raised herein, Husband's appeal from the domestic relations court's final divorce decree is denied.

{¶ 24} Judgment affirmed.

PIPER and BYRNE, JJ., concur.